# DOUGLAS OIL COMPANY OF CALIFORNIA ET AL. *v.* PETROL STOPS NORTHWEST ET AL.

No. 77–1547.   Argued December 5, 1978—Decided April 18, 1979

212

Powell, J., delivered the opinion of the Court, in which Brennan, White, Marshall, Blackmun, and Rehnquist, JJ., joined. Rehnquist, J., filed a concurring opinion, *post*, p. 231. Stevens, J., filed a dissenting opinion, in which Burger, C. J., and Stewart, J., joined, *post*, p. 233.

*Max L. Gillam* argued the cause for petitioners. With him on the briefs were *Morris A. Thurston* and *Thomas H. Burton, Jr.*

*Daniel L. Berman* argued the cause and filed a brief for the nongovernment respondents.

*Sara S. Beale* argued the cause for the United States. With her on the brief were *Solicitor General McCree, Assistant Attorney General Shenefield, Louis F. Claiborne,* and *Robert B. Nicholson.*

MR. JUSTICE POWELL delivered the opinion of the Court.

This case presents two intertwined questions concerning a civil litigant's right to obtain transcripts [1] of federal criminal grand jury proceedings. First, what justification for disclosure must a private party show in order to overcome the presumption of grand jury secrecy applicable to such transcripts? Second, what court should assess the strength of this showing—the court where the civil action is pending, or the court that acts as custodian of the grand jury documents?

## I

Respondent Petrol Stops Northwest is a gasoline retailer unaffiliated with any major oil company. In 1973, it operated 104 service stations located in Arizona, California, Oregon, Washington, and several other States. On December 13, 1973, respondent filed an antitrust action in the District of Arizona against 12 large oil companies, including petitioners Douglas Oil Co. of California and Phillips Petroleum Co. [2] In its complaint, respondent alleged that on January 1, 1973, there had been a sharp reduction in the amount of gasoline offered for sale to it, and that this reduction had resulted from a conspiracy among the oil companies to restrain trade in gasoline, in violation of §§ 1 and 2 of the Sherman Act. 26 Stat. 209, as amended, 15 U. S. C. §§ 1, 2. As a part of this conspiracy, respondent charged, petitioners and their codefendants had fixed the prices of gasoline at the retail and wholesale distribution levels in California, Oregon, and Washington. [3]

---

[1] "Transcripts" is used herein to refer to the verbatim recordings of testimony given before a grand jury.

[2] Also named as defendants were Continental Oil Co. (an affiliate of petitioner Douglas Oil); Gulf Oil Co.; Shell Oil Co.; Exxon Corp.; Mobil Oil Corp.; Union Oil Co. of California; Amoco Oil Co.; Standard Oil Co. of California; Standard Oil Co. of Indiana; and Armour Oil Co.

[3] In addition, the complaint charged that the defendants had tied the sale of gasoline to the leasing of service stations, had entered into a

Respondents Gas-A-Tron of Arizona and Coinoco also independently sell gasoline through service stations they own or lease. Unlike respondent Petrol Stops Northwest, however, their operations are limited to the vicinity of Tucson, Ariz. On November 2, 1973, Gas-A-Tron and Coinoco filed an antitrust complaint in the District of Arizona naming as defendants nine large oil companies, including petitioner Phillips Petroleum Co.[4] Like respondent Petrol Stops Northwest, Gas-A-Tron and Coinoco alleged that as of January 1, 1973, their supply of gasoline had been sharply reduced, and attributed this reduction to a conspiracy to restrain trade in violation of the Sherman Act. The specific charges of illegal behavior asserted by the two retailers substantially paralleled those made by Petrol Stops Northwest in its complaint, and included an allegation that the defendants had fixed the price of gasoline at the wholesale and retail levels.[5]

Although the issues and defendants in the two actions were substantially the same, the cases were assigned to two different judges in the District of Arizona. In February 1974, respondents served upon petitioners a set of interrogatories which included a request that petitioners state whether either of their companies at any time between January 1, 1968, and December 14, 1974 (sic), had had any communication with any of their competitors concerning the wholesale price of gasoline to be sold to unaffiliated retailers. Petitioners also were asked to produce any documents they had concerning

---

concerted refusal to deal with independent gasoline retailers, had maintained a monopoly over the refinery capacity of the United States, and had set predatory prices.

[4] Also named as defendants were Union Oil Co. of California; Amoco Oil Co.; Standard Oil Co. of Indiana; Shell Oil Co.; Mobil Oil Corp.; Standard Oil Co. of California; Exxon Corp.; and Diamond Shamrock.

[5] In addition, Gas-A-Tron and Coinoco charged that the oil companies had violated the Robinson-Patman Act, 49 Stat. 1526, 15 U. S. C. §§ 13–13b and 21a, by selling gasoline to affiliated retailers at prices more favorable than those offered unaffiliated retailers such as respondents.

such communications. Petitioners responded that they were aware of no such communications, and therefore could produce no documents pertinent to the request.[6]

In the meantime, the Antitrust Division of the Department of Justice had been investigating since 1972 the pricing behavior on the west coast of several major oil companies, including petitioners. See App. 26. As part of this investigation, employees of petitioners were called to testify before a grand jury empaneled in the Central District of California. The Government's investigation culminated on March 19, 1975, when the grand jury returned an indictment charging petitioners and four other oil companies with having conspired to fix the price of "rebrand gasoline" in California, Oregon, Washington, Nevada, and Arizona.[7] The indictment alleged that the price-fixing conspiracy had begun in July 1970 and had continued at least until the end of 1971.

---

[6] In its response to the interrogatory, petitioner Phillips stated:

"Since October, 1969, it has been Phillips' policy to refrain from any conversations or communications with any and all of its competitors relating in any way to prices except in situations where Phillips is selling to or buying from a competitor and the price of the product being bought and sold obviously must be discussed." 2 Record 6.

[7] In addition to petitioners, Powerene Oil Co., Fletcher Oil & Refining Co., Golden Eagle Refining Co., and MacMillan Ring-Free Oil Co. were named as codefendants. The indictment alleged, in part, that the defendants and co-conspirators had engaged in an unlawful combination and conspiracy in restraint of trade, "in violation of Section 1 of the Act of Congress of July 2, 1890, as amended (15 U. S. C. § 1), commonly known as the Sherman Act. . . . The aforesaid combination and conspiracy has consisted of a continuing agreement, understanding and concert of action among the defendants and co-conspirators, the substantial terms of which have been to increase, fix, stabilize and maintain the price of rebrand gasoline." App. 126–127.

"Rebrand gasoline" is defined in the indictment to mean "gasoline sold for resale in service stations under a trademark or brand name not owned or controlled by an oil refiner." Id., at 124. It appears to be undisputed that the gasoline purchased by respondents from the major oil companies was "rebrand gasoline" within the meaning of the indictment.

Although initially all six defendants charged in the criminal indictment pleaded not guilty, by December 1975, each had pleaded *nolo contendere* and was fined $50,000. Before changing their pleas, petitioners, acting pursuant to Fed. Rule Crim. Proc. 16 (a)(1)(A), asked the District Court for the Central District of California to give them copies of the transcripts of testimony given by their employees before the grand jury. Their request was granted, and it appears that petitioners continue to possess copies of these transcripts.

In October 1976, respondents served upon petitioners requests under Fed. Rule Civ. Proc. 34 for production of the grand jury transcripts in petitioners' possession. Petitioners objected to the requests for production, arguing that the transcripts were not relevant to the private antitrust actions and that they were not likely to lead to any admissible evidence. Respondents did not pursue their discovery requests by making a motion in the Arizona trial court under Fed. Rule Civ. Proc. 37 to compel discovery. See n. 17, *infra.* Rather, they filed a petition in the District Court for the Central District of California asking that court, as guardian of the grand jury transcripts under Fed. Rule Crim. Proc. 6 (e), to order them released to respondents. An attorney from the Antitrust Division of the Department of Justice appeared and indicated that the Government had no objection to respondents' receiving the transcripts already made available to petitioners under Fed. Rule Crim. Proc. 16 (a)(1)(A). He suggested to the court, however, that the real parties in interest were petitioners, and therefore that they should be given an opportunity to be heard. The California District Court accepted this suggestion, and petitioners participated in the proceedings as parties adverse to respondents.

After briefing and oral argument, the court ordered the Chief of the Antitrust Division's Los Angeles Office "to produce for [respondents'] inspection and copying all grand jury transcripts previously disclosed to Phillips Petroleum Company or Douglas Oil Company of California or their attorneys

relating to the indictment in *United States* v. *Phillips, et al.,* Criminal Docket No. 75–377." App. 48–49. The production order was subject, however, to several protective conditions. The transcripts were to "be disclosed only to counsel for [respondents] in connection with the two civil actions" pending in Arizona. Furthermore, under the court's order the transcripts of grand jury testimony "may be used . . . solely for the purpose of impeaching that witness or refreshing the recollection of a witness, either in deposition or at trial" in the Arizona actions. Finally, the court forbade any further reproduction of the matter turned over to respondents, and ordered that the material be returned to the Antitrust Division "upon completion of the purposes authorized by this Order."

On appeal, the Ninth Circuit affirmed the disclosure order. *Petrol Stops Northwest* v. *United States,* 571 F. 2d 1127 (1978). The Court of Appeals noted that under *United States* v. *Procter & Gamble Co.,* 356 U. S. 677 (1958), a party seeking access to grand jury transcripts must show a "particularized need." In evaluating the strength of the need shown in the present case, the Ninth Circuit considered two factors: the need for continued grand jury secrecy and respondents' need for the requested material. The court found the former need to be insubstantial, as the grand jury proceeding had concluded three years before and the transcripts already had been released to petitioners. As to respondents' claim, the court conceded that it knew little about the Arizona proceedings, but speculated that the transcripts would facilitate the prosecution of respondents' civil suits: Petitioners' answers to the 1974 interrogatories concerning price communications with competitors appeared to be at odds with their pleas of *nolo contendere* in the California criminal action.

## II

Petitioners contend that the courts below erred in holding that, because the grand jury had dissolved and the requested material had been disclosed already to the defendants, re-

spondents had to show only a "slight need" for disclosure.[8]
According to petitioners, this approach to disclosure under
Fed. Rule Crim. Proc. 6 (e) is contrary to prior decisions of
this Court indicating that "a civil litigant must demonstrate
a compelling necessity for specified grand jury materials
before disclosure is proper." Brief for Petitioners 16.

We consistently have recognized that the proper function-
ing of our grand jury system depends upon the secrecy of
grand jury proceedings. See, *e. g., United States* v. *Procter
& Gamble Co., supra.*[9] In particular, we have noted several

---

[8] As an initial matter, respondents argue that petitioners lack standing
to object to the disclosure order, as the only interest in grand jury secrecy
remaining in this case is a public one. Accord, *United States* v. *American
Oil Co.,* 456 F. 2d 1043 (CA3 1972) *(per curiam).* Contra, *Illinois* v.
*Sarbaugh,* 552 F. 2d 768 (CA7), cert. denied *sub nom. J. L. Simmons Co.*
v. *Illinois,* 434 U. S. 889 (1977). There can be no question that there
is standing under Art. III for petitioners to object to the disclosure order,
as release of the transcripts to their civil adversaries could result in a sub-
stantial injury to them. See *Warth* v. *Seldin,* 422 U. S. 490, 499 (1975).
Moreover, the interest petitioners assert is one legally protected under the
Court's rulings concerning grand jury secrecy. One of the several interests
promoted by grand jury secrecy is the protection of the innocent accused
from disclosure of the accusations made against him before the grand jury.
See n. 10, *infra.* Although petitioners in the present case were indicted
and pleaded *nolo contendere,* under our decisions they nonetheless are
legally entitled to protection, as there may have been accusations made for
which no indictment was returned.

[9] Since the 17th century, grand jury proceedings have been closed to
the public, and records of such proceedings have been kept from the
public eye. See Calkins, Grand Jury Secrecy, 63 Mich. L. Rev. 455, 457
(1965). The rule of grand jury secrecy was imported into our federal
common law and is an integral part of our criminal justice system. See
*Costello* v. *United States,* 350 U. S. 359, 362 (1956); *United States* v.
*Johnson,* 319 U. S. 503, 513 (1943). Federal Rule Crim. Proc. 6 (e) codi-
fies the requirement that grand jury activities generally be kept secret, by
providing:

"A grand juror, an interpreter, a stenographer, an operator of a recording
device, a typist who transcribes recorded testimony, [or] an attorney for
the Government . . . shall not disclose matters occurring before the grand

distinct interests served by safeguarding the confidentiality of grand jury proceedings. First, if preindictment proceedings were made public, many prospective witnesses would be hesitant to come forward voluntarily, knowing that those against whom they testify would be aware of that testimony. Moreover, witnesses who appeared before the grand jury would be less likely to testify fully and frankly, as they would be open to retribution as well as to inducements. There also would be the risk that those about to be indicted would flee, or would try to influence individual grand jurors to vote against indictment. Finally, by preserving the secrecy of the proceedings, we assure that persons who are accused but exonerated by the grand jury will not be held up to public ridicule.[10]

For all of these reasons, courts have been reluctant to lift unnecessarily the veil of secrecy from the grand jury. At the same time, it has been recognized that in some situations justice may demand that discrete portions of transcripts be

---

jury, except as otherwise provided for in these rules. . . . A knowing violation of rule 6 may be punished as a contempt of court."

Although the purpose for grand jury secrecy originally was protection of the criminally accused against an overreaching Crown, see Calkins, Grand Jury Secrecy, *supra*, with time it came to be viewed as necessary for the proper functioning of the grand jury. See n. 10, *infra*.

[10] In *United States* v. *Procter & Gamble Co.*, 356 U. S. 677, 681–682, n. 6 (1958), we said that the reasons for grand jury secrecy had been summarized correctly in *United States* v. *Rose*, 215 F. 2d 617, 628–629 (CA3 1954):

"(1) To prevent the escape of those whose indictment may be contemplated; (2) to insure the utmost freedom to the grand jury in its deliberations, and to prevent persons subject to indictment or their friends from importuning the grand jurors; (3) to prevent subornation of perjury or tampering with the witness who may testify before [the] grand jury and later appear at the trial of those indicted by it; (4) to encourage free and untrammeled disclosures by persons who have information with respect to the commission of crimes; (5) to protect innocent accused who is exonerated from disclosure of the fact that he has been under investigation, and from the expense of standing trial where there was no probability of guilt.' "

made available for use in subsequent proceedings. See, *e. g.*, *United States* v. *Socony-Vacuum Oil Co.*, 310 U. S. 150, 233–234 (1940). Indeed, recognition of the occasional need for litigants to have access to grand jury transcripts led to the provision in Fed. Rule Crim. Proc. 6 (e)(2)(C)(i) that disclosure of grand jury transcripts may be made "when so directed by a court preliminarily to or in connection with a judicial proceeding."[11]

---

[11] Federal Rule Crim. Proc. 6 (e) provides in full:

"(e) Secrecy of Proceedings and Disclosure.—

"(1) General rule.—A grand juror, an interpreter, a stenographer, an operator of a recording device, a typist who transcribes recorded testimony, an attorney for the Government, or any person to whom disclosure is made under paragraph (2)(A)(ii) of this subdivision shall not disclose matters occurring before the grand jury, except as otherwise provided for in these rules. No obligation of secrecy may be imposed on any person except in accordance with this rule. A knowing violation of rule 6 may be punished as a contempt of court.

"(2) Exceptions.—

"(A) Disclosure otherwise prohibited by this rule of matters occurring before the grand jury, other than its deliberations and the vote of any grand juror, may be made to—

"(i) an attorney for the government for use in the performance of such attorney's duty; and

"(ii) such government personnel as are deemed necessary by an attorney for the government to assist an attorney for the government in the performance of such attorney's duty to enforce Federal criminal law.

"(B) Any person to whom matters are disclosed under subparagraph (A)(ii) of this paragraph shall not utilize that grand jury material for any purpose other than assisting the attorney for the government in the performance of such attorney's duty to enforce Federal criminal law. An attorney for the government shall promptly provide the district court, before which was impaneled the grand jury whose material has been so disclosed, with the names of the persons to whom such disclosure has been made.

"(C) Disclosure otherwise prohibited by this rule of matters occurring before the grand jury may also be made—

"(i) when so directed by a court preliminarily to or in connection with a judicial proceeding; or

"(ii) when permitted by a court at the request of the defendant, upon

In *United States* v. *Procter & Gamble Co.*, the Court sought to accommodate the competing needs for secrecy and disclosure by ruling that a private party seeking to obtain grand jury transcripts must demonstrate that "without the transcript a defense would be greatly prejudiced or that without reference to it an injustice would be done." 356 U. S., at 682. Moreover, the Court required that the showing of need for the transcripts be made "with particularity" so that "the secrecy of the proceedings [may] be lifted discretely and limitedly." *Id.,* at 683. Accord, *Pittsburgh Plate Glass Co.* v. *United States,* 360 U. S. 395, 400 (1959).

In *Dennis* v. *United States,* 384 U. S. 855 (1966), the Court considered a request for disclosure of grand jury records in quite different circumstances. It was there held to be an abuse of discretion for a District Court in a criminal trial to refuse to disclose to the defendants the grand jury testimony of four witnesses who some years earlier had appeared before a grand jury investigating activities of the defendants. The grand jury had completed its investigation, and the witnesses whose testimony was sought already had testified in public concerning the same matters. The Court noted that "[n]one of the reasons traditionally advanced to justify nondisclosure of grand jury minutes" was significant in those circumstances, *id.,* at 872 n. 18, whereas the defendants had shown it to be likely that the witnesses' testimony at trial was inconsistent with their prior grand jury testimony.

---

a showing that grounds may exist for a motion to dismiss the indictment because of matters occurring before the grand jury.

"(3) Sealed Indictments.—The Federal magistrate to whom an indictment is returned may direct that the indictment be kept secret until the defendant is in custody or has been released pending trial. Thereupon the clerk shall seal the indictment and no person shall disclose the return of the indictment except when necessary for the issuance and execution of a warrant or summons."

Although Fed. Rule Crim. Proc. 6 (e) was amended in 1977, all parties agree that the changes do not bear upon the issues in the present case.

From *Procter & Gamble* and *Dennis* emerges the standard for determining when the traditional secrecy of the grand jury may be broken: Parties seeking grand jury transcripts under Rule 6 (e) must show that the material they seek is needed to avoid a possible injustice in another judicial proceeding, that the need for disclosure is greater than the need for continued secrecy, and that their request is structured to cover only material so needed.[12] Such a showing must be made even when the grand jury whose transcripts are sought has concluded its operations, as it had in *Dennis*. For in considering the effects of disclosure on grand jury proceedings, the courts must consider not only the immediate effects upon a particular grand jury, but also the possible effect upon the functioning of future grand juries. Persons called upon to testify will consider the likelihood that their testimony may one day be disclosed to outside parties. Fear of future retribution or social stigma may act as powerful deterrents to those who would come forward and aid the grand jury in the performance of its duties. Concern as to the future consequences of frank and full testimony is heightened where the witness is an employee of a company under investigation. Thus, the interests in grand jury secrecy, although reduced, are not eliminated merely because the grand jury has ended its activities.[13]

---

[12] As noted in *United States* v. *Procter & Gamble Co.*, 356 U. S., at 683, the typical showing of particularized need arises when a litigant seeks to use "the grand jury transcript at the trial to impeach a witness, to refresh his recollection, to test his credibility and the like." Such use is necessary to avoid misleading the trier of fact. Moreover, disclosure can be limited strictly to those portions of a particular witness' testimony that bear upon some aspect of his direct testimony at trial.

[13] The transcripts sought by respondents already had been given to the target companies in the grand jury investigation. Thus, release to respondents will not enhance the possibility of retaliatory action by employers in this case. But the other factors supporting the presumption of secrecy remain and must be considered.

It is clear from *Procter & Gamble* and *Dennis* that disclosure is appropriate only in those cases where the need for it outweighs the public interest in secrecy, and that the burden of demonstrating this balance rests upon the private party seeking disclosure. It is equally clear that as the considerations justifying secrecy become less relevant, a party asserting a need for grand jury transcripts will have a lesser burden in showing justification. Accord, *Illinois* v. *Sarbaugh,* 552 F. 2d 768, 774 (CA7), cert. denied *sub nom. J. L. Simmons Co.* v. *Illinois,* 434 U. S. 889 (1977); *U. S. Industries, Inc.* v. *United States District Court,* 345 F. 2d 18, 21 (CA9), cert. denied, 382 U. S. 814 (1965); 1 C. Wright, Federal Practice & Procedure § 106, p. 173 (1969). In sum, as so often is the situation in our jurisprudence, the court's duty in a case of this kind is to weigh carefully the competing interests in light of the relevant circumstances and the standards announced by this Court. And if disclosure is ordered, the court may include protective limitations on the use of the disclosed material, as did the District Court in this case. Moreover, we emphasize that a court called upon to determine whether grand jury transcripts should be released necessarily is infused with substantial discretion. See *Pittsburgh Plate Glass Co.* v. *United States, supra,* at 399.

Applying these principles to the present case, we conclude that neither the District Court nor the Court of Appeals erred in the standard by which it assessed the request for disclosure under Rule 6 (e). The District Court made clear that the question before it was whether a particularized need for disclosure outweighed the interest in continued grand jury secrecy. See App. 53–55. Similarly, the Court of Appeals correctly understood that the standard enunciated in *Procter & Gamble* requires a court to examine the extent of the need for continuing grand jury secrecy, the need for disclosure, and

the extent to which the request was limited to that material directly pertinent to the need for disclosure.[14]

## III

Petitioners contend, irrespective of the legal standard applied, that the District Court for the Central District of California was not the proper court to rule on respondents' motion for disclosure. Petitioners note that the Court of Appeals and the District Court both purported to base their decisions in part upon the need for use of the requested material in the civil antitrust proceedings pending in Arizona.[15] This determination necessarily involved consideration of the nature and status of the Arizona proceedings, matters peculiarly within the competence of the Arizona District Court.

Although the question is an important one, this Court heretofore has had no occasion to consider which court or courts may direct disclosure of grand jury minutes under Fed. Rule Crim. Proc. 6 (e).[16] The federal courts that have addressed the

---

[14] As petitioners point out, the Court of Appeals did say that, because of the circumstances, "the party seeking disclosure should not be required to demonstrate a large compelling need," and that a "minimal showing of particularized need" would suffice. *Petrol Stops Northwest* v. *United States,* 571 F. 2d 1127, 1130 (1978). In a different context, these statements could be read as an unjustified lowering of the standard of proof required by *Procter & Gamble* and *Dennis.* We cannot say, however, that the Court of Appeals applied an incorrect standard in view of the circumstances of this case and the discussion thereof in the opinion below.

[15] The District Court indicated that respondents had made out a "prima facie" showing that the requested materials were relevant to Arizona civil proceedings "because of the nature of the grand jury inquiry with relation to the proceedings here concerned." App. 58. The Court of Appeals found that respondents had shown "a particularized need beyond the mere relevance of the materials [requested]." 571 F. 2d, at 1130.

[16] In each of the three cases in which this Court has considered the applicable standard for disclosure of grand jury transcripts, the court in which the grand jury was empaneled also was the location of the litigation giving rise to the request for disclosure. See, *e. g.,* Juris. Statement in *United States* v. *Procter & Gamble Co.,* O. T. 1957, No. 51, p. 3. Indeed,

question generally have said that the request for disclosure of grand jury minutes under Rule 6 (e) must be directed toward the court under whose auspices the grand jury was empanneled. See *Illinois* v. *Sarbaugh, supra,* at 772–773; *Gibson* v. *United States,* 131 U. S. App. D. C. 143, 144, 403 F. 2d 166, 167 (1968); *Herman Schwabe, Inc.* v. *United Shoe Machinery Corp.,* 21 F. R. D. 233, 235 (DC 1957); accord, 1 Wright, *supra,* § 106, p. 174. But see *United States* v. *American Oil Co.,* 264 F. Supp. 93, 95 (ED Mo. 1966). Indeed, those who seek grand jury transcripts have little choice other than to file a request with the court that supervised the grand jury, as it is the only court with control over the transcripts.[17]

Quite apart from practical necessity, the policies underlying Rule 6 (e) dictate that the grand jury's supervisory court participate in reviewing such requests, as it is in the best position to determine the continuing need for grand jury secrecy. Ideally, the judge who supervised the grand jury should review the request for disclosure, as he will have firsthand knowledge of the grand jury's activities. But even other judges of the district where the grand jury sat may be able

---

in *Dennis* v. *United States,* 384 U. S. 855 (1966), and in *Pittsburgh Plate Glass Co.* v. *United States,* 360 U. S. 395 (1959), the parties requested transcripts for use in the criminal case to which the grand jury proceedings had been a prologue.

[17] As we have noted, by virtue of a prior order petitioners have possession of the transcripts sought by respondents. See *supra,* at 216. We were informed at argument by counsel for the Government that under the terms of that order, the transcripts were to be returned upon completion of the criminal proceeding in the Central District of California and were to be used only for purposes of defending against the criminal charges in that case. See Tr. of Oral Arg. 35–36. It appears, therefore, that if the District Court in Arizona had the authority to order disclosure by the petitioners, this power was derived from petitioners' unlawful retention of the transcripts. Indeed, as the Government suggests, it is questionable whether the Arizona District Court properly could have ordered production of the documents in direct violation of the California District Court order.

to discover facts affecting the need for secrecy more easily than would judges from elsewhere around the country. The records are in the custody of the district court, and therefore are readily available for reference. Moreover, the personnel of that court—and particularly those of the United States Attorney's office who worked with the grand jury—are more likely to be informed about the grand jury proceedings than those in a district that had no prior experience with the subject of the request. We conclude, therefore, that, in general, requests for disclosure of grand jury transcripts should be directed to the court that supervised the grand jury's activities.

It does not follow, however, that in every case the court in which the grand jury sat should make the final decision whether a request for disclosure under Rule 6 (e) should be granted. Where, as in this case, the request is made for use in a case pending in another district, the judges of the court having custody of the grand jury transcripts will have no firsthand knowledge of the litigation in which the transcripts allegedly are needed, and no practical means by which such knowledge can be obtained. In such a case, a judge in the district of the grand jury cannot weigh in an informed manner the need for disclosure against the need for maintaining grand jury secrecy. Thus, it may well be impossible for that court to apply the standard required by the decisions of this Court, reiterated above, for determining whether the veil of secrecy should be lifted. See *supra,* at 221–224.

In the *Electrical Equipment Cases,* a federal court contemplated a similar quandary. Following the convictions of 29 heavy electrical equipment manufacturers for price fixing, about 1,900 private damages suits were filed in 34 Federal Districts around the country. See Note, Release of Grand Jury Minutes in the National Deposition Program of the Electrical Equipment Cases, 112 U. Pa. L. Rev. 1133 (1964). During one of these suits, plaintiffs asked the District Court for the Eastern District of Pennsylvania to disclose portions

of a witness' grand jury testimony so that they could be used to refresh the witness' memory during a deposition. *Philadelphia* v. *Westinghouse Electric Corp.*, 210 F. Supp. 486 (ED Pa. 1962). The request was directed to Judge Clary, who had supervised the grand jury and also was in charge of the deposition. He had no difficulty, therefore, setting forth in detail in his opinion both the need for secrecy and the need for disclosure.

Recognizing, however, that the other District Courts in which related actions were pending might face similar requests for the grand jury minutes under his control, Judge Clary outlined a procedure by which parties in the future could put forward such requests. In the court's words:

"[T]he Grand Jury transcript of any witness deposed in [these suits], either in this district or in any other district of the United States in which these cases are pending, should be made available to the deposition Judge for use in his district. There may be and probably will be many instances during these national depositions when disclosure may be advisable. . . . The refusal [to order disclosure in this case] cannot rule out production where in camera examination by a deposition Judge uncovers material discrepancy or significant facts which the witness concealed, or failed to remember, at his deposition. Such disclosure as is necessary to uncover full and complete facts must be allowed. If, at the completion of any deposition taken in the national program, a motion is made for the production of that witness' Grand Jury testimony, and if the deposition Judge requests it from this Court for examination in camera, the testimony will be immediately made available to him. The deposition Judge may then contrast the Grand Jury testimony with the deposition and determine, in his own discretion, whether in the interest of justice there is compelling need for disclosure." *Id.*, at 491.

Because Judge Clary in his opinion had discussed with care the various secrecy concerns as they applied to the transcripts before him, district courts called upon in the future to rule upon disclosure motions could weigh these concerns against the need for disclosure. In this way, the court provided precisely what was required by the situation: a coordinating of the informed views of both the civil trial court and the grand jury court concerning the propriety of disclosing portions of the grand jury minutes. Several other federal courts, recognizing the need for collaboration, have devised means by which both the court of the grand jury and the court of the collateral civil proceeding may participate in the decision whether transcripts should be released under Rule 6 (e). See *In re 1975–2 Grand Jury Investigation,* 566 F. 2d 1293, 1296 (CA5 1978); *Illinois* v. *Sarbaugh,* 552 F. 2d, at 773 n. 5; *Baker* v. *United States Steel Corp.,* 492 F. 2d 1074, 1076–1077 (CA2 1974); *Gibson* v. *United States,* 131 U. S. App. D. C., at 144–145, 403 F. 2d, at 167–168.

In the present case, the District Court for the Central District of California was called upon to make an evaluation entirely beyond its expertise. The District Judge readily conceded that he had no knowledge of the civil proceedings pending several hundred miles away in Arizona. App. 58. Nonetheless, he was asked to rule whether there was a "particularized need" for disclosure of portions of the grand jury transcript and whether this need outweighed the need for continued grand jury secrecy. Generally we leave it to the considered discretion of the district court to determine the proper response to requests for disclosure under Rule 6 (e). See *Pittsburgh Plate Glass Co.* v. *United States,* 360 U. S., at 399. We have a duty, however, to guide the exercise of discretion by district courts, and when necessary to overturn discretionary decisions under Rule 6 (e). See, *e. g., Dennis* v. *United States,* 384 U. S. 855 (1966).

We find that the District Court here abused its discretion in releasing directly to respondents the grand jury minutes

they requested. Appreciating that it was largely ignorant of the Arizona civil suits, the court nonetheless made a judgment concerning the relative needs for secrecy and disclosure.[18] The court based its decision largely upon the unsupported assertions of counsel during oral argument before it, supplemented only by the criminal indictment returned by the grand jury, the civil complaints, and petitioners' response to a single interrogatory that appeared to be inconsistent with petitioners' *nolo contendere* plea in the criminal case. Even the court's comparison of the criminal indictment and the civil complaints did not indicate unambiguously what, if any, portions of the grand jury transcripts would be pertinent to the subject of the Arizona actions, as only some of the same parties were named and only some of the same territory was covered.

The possibility of an unnecessary breach of grand jury secrecy in situations such as this is not insignificant. A court more familiar with the course of the antitrust litigation might have seen important differences between the allegations of the indictment and the contours of the conspiracy respondents sought to prove in their civil actions—differences indicating that disclosure would likely be of little value to respondents, save perhaps as a mechanism for general discovery. Alterna-

---

[18] Indeed, the court indicated that it was equally ignorant of the circumstances surrounding the grand jury proceedings. See App. 53. Thus, it appears that this particular judge had no knowledge whatsoever of the facts underlying either the criminal or civil proceedings, and so was in no position to consider the relationship between the two.

Contrary to the statements in the dissenting opinion, *post*, at 235 n. 3, and 236 n. 8, we do not "admonish [the] trial judge" by concluding that there was an abuse of discretion. We recognize that the proper procedure in a case of this kind had not been established in the Ninth Circuit or by this Court at the time of the trial court's ruling. Thus, the trial court—whose lot it was to act on respondents' request—had neither authoritative guidance as to the proper procedure to be followed nor familiarity with the civil or criminal proceedings. One purpose of our decision today is to afford such guidance in cases of this kind.

tively, the courts where the civil proceedings were pending might have considered disclosure at that point in the litigation to be premature; if there were to be conflicts between petitioners' statements and their actions in the criminal proceedings, the court might have preferred to wait until they ripened at depositions or even during testimony at trial.

Under these circumstances, the better practice would have been for the District Court, after making a written evaluation of the need for continued grand jury secrecy and a determination that the limited evidence before it showed that disclosure might be appropriate, to send the requested materials to the court where the civil cases were pending.[19]  The Arizona court, armed with its special knowledge of the status of the civil actions, then could have considered the requests for disclosure in light of the California court's evaluation of the need

---

[19] Apparently recognizing his difficult position, the District Judge in the present case at one point offered, "through an overabundance of precaution . . . to telephone [the judges presiding over the Arizona proceedings] to see if they have any objection" to the release to respondents of the grand jury transcripts.  Contrary to the suggestion in the dissenting opinion, see *post,* at 235 n. 3, this offer was no suitable substitute for referring the matter to the Arizona District Court: An oral request made over the telephone to a busy District Judge cannot be considered with the same care and understanding that formal motions properly receive.  Under the suggested informal procedure the Arizona District Court would have been required to evaluate the need for disclosure without having either access to the grand jury materials or firsthand knowledge of what they contained.

The dissenting opinion argues that petitioners' failure to demand reference to the Arizona court justified the District Court's granting respondents' discovery request regardless of its implications.  See *ibid.* With respect to grand jury secrecy, a matter of great sensitivity impinging upon the public interest, courts cannot be free to act merely because the parties have failed to specify precisely the relief to which they are entitled.  Such *carte blanche* is particularly inappropriate in the present case, where petitioners argued before the District Court that it lacked the expertise required to make a fair determination of the need for disclosure.  The issue upon which we rule today, therefore, was presented to the District Court by petitioners.

for continued grand jury secrecy. In this way, both the need for continued secrecy and the need for disclosure could have been evaluated by the courts in the best position to make the respective evaluations.[20]

We do not suggest, of course, that such a procedure would be required in every case arising under Rule 6 (e). Circumstances that dictate the need for cooperative action between the courts of different districts will vary, and procedures to deal with the many variations are best left to the rulemaking procedures established by Congress. Undoubtedly there will be cases in which the court to whom the Rule 6 (e) request is directed will be able intelligently, on the basis of limited knowledge, to decide that disclosure plainly is inappropriate or that justice requires immediate disclosure to the requesting party, without reference of the matter to any other court. Our decision today therefore is restricted to situations, such as that presented by this case, in which the district court having custody of the grand jury records is unlikely to have dependable knowledge of the status of, and the needs of the parties in, the civil suit in which the desired transcripts are to be used.

The judgment of the Court of Appeals is reversed, and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*

MR. JUSTICE REHNQUIST, concurring.

I join the Court's opinion because I agree with its conclusions on the merits of the issue of the availability of the grand jury transcripts to these private treble-damages action plaintiffs. I do not feel that the Court can leave

---

[20] Because the District Court for the Central District of California did not have the knowledge necessary to make an evaluation of the relative needs for secrecy and disclosure, we express no view whether on these facts a court with such knowledge properly could have ordered release of the requested transcripts.

entirely unnoticed, however, the total absence of any reference by either of the parties or by the Court of Appeals to the basis upon which that court took jurisdiction of the petitioners' "appeal" from the order of the District Court granting access to the grand jury minutes. At the same time, I am handicapped in formulating a view of my own on the subject, because of the absence of any assistance from the parties or any consideration of the question by the Court of Appeals or by this Court. But in order for us to have jurisdiction over the case, the case must be properly "in" the Court of Appeals for purposes of 28 U. S. C. § 1254. *Liberty Mutual Life Ins. Co.* v. *Wetzel,* 424 U. S. 737 (1976). And it may well be that the availability to the losing party of a right to appeal an order such as this may be a factor in deciding whether the proceedings should ultimately be treated as part of the discovery in the court in which the treble-damages action is pending, or as a separate proceeding in the court which conducted the grand jury proceeding.

This case is not like *United States* v. *Procter & Gamble Co.,* 356 U. S. 677 (1958). In *Procter & Gamble,* the defendants in a civil action brought by the Government sought discovery of grand jury minutes pursuant to Fed. Rule Civ. Proc. 34.\* The District Court granted discovery, and the Government deliberately took a default in order to obtain review of the discovery ruling in the course of its appeal from a "final judgment" of the District Court pursuant to 15 U. S. C. § 29. 356 U. S., at 680. But absent such extraordinary circumstances, our cases and those of the Courts of Appeals hold that review of the granting or denial of discovery is not immediately reviewable, except perhaps by way of mandamus for gross abuse of discretion on the part of the trial court. See, *e. g., Cobbledick* v. *United States,* 309 U. S. 323 (1940).

---

\*Only one defendant moved for discovery of the minutes under Fed. Rule Crim. Proc. 6 (e). 356 U. S., at 678 n. 1. The Court's discussion of the merits of the defendants' claims was based on Fed. Rule Civ. Proc. 34. 356 U. S., at 681.

Two Courts of Appeals have taken different approaches to the issue of appealability of orders regarding disclosure of grand jury minutes. Compare *Baker* v. *United States Steel Corp.*, 492 F. 2d 1074 (CA2 1974), with *Illinois* v. *Sarbaugh*, 552 F. 2d 768 (CA7), cert. denied *sub nom. J. L. Simmons Co.* v. *Illinois*, 434 U. S. 889 (1977). Since all that is presented to us in this case is an effort to obtain appellate review of an order by the court having custody of the grand jury transcript directing that the transcript be turned over to a party applying for it, different factual permutations which might raise and require different analysis in terms of appealability need not be decided. For example, I am not at all sure that an order of the grand jury court transferring the transcripts to the civil court, as contemplated by the Court's decision, *ante*, at 230, would be appealable. See *Baker* v. *United States Steel Corp.*, *supra*. Nor am I certain that I would agree with the analysis of the Court of Appeals for the Seventh Circuit in *Illinois* v. *Sarbaugh*, *supra*, as to the authority under which the district court exercises jurisdiction in this type of case. Nonetheless, I believe that since an order such as is involved in this case disposes of all of the contentions of the parties and terminates a separate proceeding pending before the grand jury court, it is therefore appealable as a "final decision" under 28 U. S. C. § 1291. See *Illinois* v. *Sarbaugh*, *supra*, at 773. If I am correct in this conclusion, this case was "in the court of appeals" from the time that petitioners filed their notice of appeal from the order of the District Court, and we may therefore exercise our certiorari jurisdiction granted by 28 U. S. C. § 1254. Satisfied at least for now with this analysis of the jurisdictional predicate to the case, I join the Court's opinion on the merits.

Mr. Justice Stevens, with whom The Chief Justice and Mr. Justice Stewart join, dissenting.

Although I join all but the last nine paragraphs of the Court's opinion, I cannot agree with the conclusion that the

District Judge sitting in the Central District of California should not have granted access to the grand jury transcripts subject to the conditions stated in his order. More fundamentally, I do not share the Court's readiness to review the District Judge's exercise of his broad discretion in this matter in the absence of any allegation of egregious abuse on his part and in the face of the confirmation of his conclusion by the Court of Appeals.[1]

Before he acted, the District Judge allowed petitioners to participate as real parties in interest in order to explain their opposition to disclosure of the transcripts,[2] he offered to communicate with the District Judges in Arizona,[3] he obtained

---

[1] The Court of Appeals affirmed the determination of the District Judge on the basis of the record before him showing the similarities between the indictment to which petitioners had pleaded no contest and the complaint in the treble-damages case. But the Court of Appeals went even further. On the basis of additional submissions by the parties on appeal, the Court of Appeals made a further finding of relevance premised on discrepancies between the bill of particulars filed by the Government in the criminal case and recent deposition testimony of petitioners' employees in the civil case. *Petrol Stops Northwest* v. *United States*, 571 F. 2d 1127, 1130–1131. Accordingly, the decision of the Court second-guesses not only the District Judge's determination as affirmed by the Court of Appeals on its own terms, but also a second *de novo* determination by the Court of Appeals based on additional information.

[2] Because the grand jury transcripts were in the possession of the United States, it was the nominal respondent in the action seeking disclosure of those transcripts. Although the Government did not oppose release of the transcripts, it did encourage the District Judge to allow petitioners to participate in the hearing as the "real parties in interest," and the court acceded to the Government's suggestion. App. 52, 90–100.

[3] Petitioners consistently argued in the District Court that respondents' motion for production of the transcripts under Fed. Rule Crim. Proc. 6 (e) should be denied outright and respondents forced to pursue the request in the Arizona courts by way of motions to compel discovery under Fed. Rule Civ. Proc. 37. In response to petitioners' argument that the two District Judges in Arizona were the only appropriate recipients of respondents' disclosure requests, the District Judge made the following statement:

"I would be very glad through an overabundance of precaution, if you

the views of the Antitrust Division of the Department of Justice,[4] and he compared the charges in the indictment with the allegations in the complaint for treble damages.[5]  Everything called to his attention by respondents supported the conclusion that the grand jury transcripts would be highly relevant in the civil litigation,[6] and petitioners not only made no concrete showing of irrelevance in rebuttal,[7] but also passed

think it would be appropriate, to telephone Judge Walsh and Judge Frey to see if they have any objection, but it doesn't seem to me that I should relegate these people to make their application to those judges when they have taken what I think is a proper step in coming here."  App. 56.

Instead of responding that it *would* be "appropriate" for the judge to communicate with the judges in Arizona, counsel for petitioners once again reiterated the argument—implicitly rejected by the Court in today's decision—that the District Judge should simply have denied the Criminal Rule 6 (e) request and relegated the entire matter to the Arizona judges for decision under Civil Rule 37.  See *ante,* at 226.  The fact that petitioners relied exclusively on this admittedly invalid objection to the production request should bar them from making the new argument in this Court that the District Judge should have transferred the Rule 6 (e) motion to the Arizona courts.  Even if that argument is cognizable here, I find inexplicable the Court's determination that the District Judge abused his discretion because the accommodation he suggested *sua sponte*— orally communicating with the judges in Arizona about the Rule 6 (e) motion and announcing their collective decision himself—is not the slightly different one that a majority of this Court would have chosen—formally transferring the Rule 6 (e) motion to the Arizona judges and forcing them to announce the collective decisions.  See *ante,* at 230–231.

[4] See App. 52, 61.

[5] See *id.,* at 57–59, 118–167.  See also 571 F. 2d., at 1131.

[6] The District Judge found as follows:

"As far as relevance, I would think that there is a prima facie relevance because of the nature of the grand jury inquiry with relation to the proceedings here concerned."  App. 58.

[7] According to their counsel, the "main thrust" of petitioners' argument before the District Judge was not that the transcripts are irrelevant to the treble-damages suit.  Instead, petitioners' primary reliance was on the incorrect argument, see *ante,* at 226, that respondents should have presented their request to the Arizona judges in the first instance.  App. 55–

up two procedural opportunities to make such a showing.[8] Since the transcripts had already been released to the defendants, no interest in protecting witnesses from possible retaliation remained. The Government foresaw no other secrecy problems.

Had I been the District Judge presented with respondents' request, I would have exercised my discretion in the same way he did. In light of today's holding, it now appears that I would have been wrong. But I do not find the Court's view on the merits of the decision below nearly as troubling as its expansive view of its appellate function in this area in which trial judges usually have broad latitude.[9] Whatever its validity, the decision of the District Judge as affirmed by the Court

---

56. When they did reach the subject of relevance, petitioners' comments were tentative at best. See, e. g., id., at 57 (emphasis added):

"MR. THURSTON [counsel for Douglas Oil]: . . . It is possible that there were—not possible. It is the fact that those grand jury proceedings concerned a number of different levels of sale, both at the wholesale and retail levels, whereas the proceedings in Arizona *may* not involve such a broad territory."

[8] In addition to accepting the District Judge's offer to consult with the Arizona judges on the subject of relevance, see n. 3, *supra,* petitioners could have requested that the District Judge view the transcripts *in camera* to test their relevance. See *Dennis* v. *United States,* 384 U. S. 855, 874. In this discretionary area, it is particularly harsh to admonish a trial judge for failing to take steps that even the parties have not suggested should be taken.

[9] Although the Court recognizes that it is customary for Rule 6 (e) determinations to be left to the "considered discretion" of the lower courts, *ante,* at 228, citing *Pittsburgh Plate Glass Co.* v. *United States,* 360 U. S. 395, 399, it finds support in *Dennis* v. *United States, supra,* for its rather exacting review of the exercise of that discretion. But in *Dennis,* the District Court had *withheld* grand jury testimony from a *criminal* defendant and had thereby run afoul of the view "that disclosure, rather than suppression, of relevant materials ordinarily promotes the proper administration of *criminal* justice." 384 U. S., at 870–871 (emphasis added), citing *Jencks* v. *United States,* 353 U. S. 657. See also *Brady* v. *Maryland,* 373

of Appeals was surely not very wide of the mark. Accordingly, for the Court to overturn that decision is to move decisively in the direction of equating an "abuse of discretion" with an exercise of discretion with which it disagrees. I cannot join in this rearrangement of the respective roles of trial and appellate courts.

---

U. S. 83. Because the permissible scope of discretion in this civil litigation is not qualified by any special policy analogous to the one favoring disclosure in *Dennis,* I find little support in that case for the result reached here.