**In re CORRUGATED CONTAINER ANTITRUST LITIGATION.**

**ANCHOR HOCKING CORPORATION, et al., Opt-Out Plaintiffs-Appellees,**

**v.**

**ST. JOE CONTAINER COMPANY, et al., Defendants-Appellants,**

**Edwin A. McCain, et al., Grand Jury Witnesses-Appellants.**

**Nos. 81–2197, 81–2235.**

United States Court of Appeals, Fifth Circuit.

Sept. 13, 1982.

John D. Roady, Houston, Tex., for Owens-Il, et al.

Hill & Ghiselli, Jerry G. Hill, Bertrand C. Moser, Frank V. Ghiselli, Jr., Houston, Tex., for witnesses Fryburg, Lendeman, Stalder & Barnum.

Richard N. Carrell, James P. Bailey, Houston, Tex., for witness Edwin A. McCain.

Howrey & Simon, Harold F. Baker, Washington, D. C., for The Mead Corp.

Richard N. Carrell, Layne E. Kruse, Houston, Tex., for St. Joe Container Co.

Freeman, Rothe, Freeman & Salzman, Jerrold E. Salzman, Kenneth B. Drost, Chicago, Ill., for Anchor Hocking, et al.

McConnell & Campbell, Francis J. McConnell, Chicago, Ill., for Pillsbury, Dean Foods, U. S. Gypsum, Green Giant.

Witherspoon, Aikin & Langley, James W. Witherspoon, Hereford, Tex., for United Farmers Co-op.

Before CLARK, Chief Judge, TATE and WILLIAMS, Circuit Judges.

CLARK, Chief Judge:

This appeal challenges the propriety of the district court's order releasing certain grand jury transcripts to the opt-out plaintiffs. It is a procedural freckle on the litigation behemoth known as *In re Corrugated Container Antitrust Litigation*, MDL 310 (S.D.Tex.).[1] In an earlier order, we instructed the parties and the district court to accommodate certain procedural and substantive considerations as a prelude to a reevaluation by the district court. 667 F.2d 4 (5th Cir. 1982). The requested accommodations have been made and once again the district court has ordered release of the transcripts. Appellants have failed to demonstrate that the district court's order constitutes an abuse of discretion. We affirm.

I

In 1975, a federal grand jury began an investigation into the pricing practices of the corrugated container industry. Fourteen corporations and twenty-six individuals were subsequently indicted for violating the federal antitrust laws. Civil antitrust actions by purchasers of corrugated board and containers ensued.

In the spring of 1979, the class and opt-out plaintiffs in the corrugated container civil litigation sought discovery of various transcripts[2] from the government's grand jury investigation. The district court, recognizing that general discovery needs are an insufficient reason for disclosing grand jury transcripts, consistently denied those initial requests. Nearly a year later, in orders dated January 25 and February 7, 1980, the district court released either complete or partial transcriptions of testimony by 135 grand jury witnesses to the class plaintiffs. This court dismissed an appeal of those orders on mootness grounds because the trial of the class plaintiffs' action had concluded. *In re Corrugated Container*

---

1. First-time readers may wish to review the general summary of the litigation's background which appears at 643 F.2d 195 (5th Cir. 1981).

2. Throughout this opinion, we refer to "grand jury transcripts" to describe transcripts of testimony, interviews, and interview statements from the grand jury investigation.

*Grand Jury*, 659 F.2d 1330 (5th Cir. 1981), *cert. denied*, —— U.S. ——, 102 S.Ct. 1994, 72 L.Ed.2d 457 (1982).

Meanwhile, the opt-out plaintiffs had renewed their requests for certain grand jury transcripts. In Pretrial Order No. 64, dated April 15, 1981, the district court ordered disclosure of the entire transcripts of testimony by five grand jury witnesses. Four of the witnesses, Phillip Barnum, Warren Fryburg, Robert Lindeman, and Leroy Stalder, are current or former employees of MacMillan Bloedel, Inc., a defendant in the opt-out litigation. The fifth witness, Edwin A. McCain, was an employee of St. Joe Paper Co., another defendant in the opt-out litigation. On May 26, 1981, the district court moved to enforce its April 15 order by directing the Justice Department, pursuant to Fed.R.Crim.P. 6(e),[3] to release the transcripts to the opt-out plaintiffs. The district court based its disclosure order, in part, on the selective assertions of the fifth amendment privilege against self-incrimination by the MacMillan Bloedel employees in the course of their deposition testimony. Notably, the opt-out plaintiffs had never sought to compel the testimony of three of those witnesses in order to test the validity of their fifth amendment assertions. As for the fourth MacMillan Bloedel employee, he had merely threatened to invoke the fifth amendment if questioned on certain topics. The district court justified disclosure of the entire McCain transcript on the ground that his memory failures at deposition could be cured by release of his grand jury transcript. The overriding theme of Pretrial Order No. 64 was that the defendants' employees' "stonewalling," in part under the sanctuary of the fifth amendment, gave rise to the need for disclosure.

The district court certified its order for appeal under § 1292(b), but this court dismissed the petition for leave to appeal. The defendants and witnesses then appealed the district court's order under 28 U.S.C. §§ 1291 & 1292(a)(1). This panel granted appellants' motion for a stay pending appeal and ordered that the appeal be expedited. We heard oral argument in January 1982.

We assumed appellate jurisdiction over this case in issuing our earlier order. Although we did not pause in that brief order to pinpoint a basis for jurisdiction, we note here that the district court's Rule 6(e) order was a final decision under 28 U.S.C. § 1291. *See Douglas Oil Co. v. Petrol Stops Northwest*, 441 U.S. 211, 99 S.Ct. 1667, 1680, 60 L.Ed.2d 156 (1979) (Rehnquist, J., concurring); *see also State of Illinois v. Sarbaugh*, 552 F.2d 768, 773 (7th Cir.), *cert. denied*, 434 U.S. 889, 98 S.Ct. 262, 54 L.Ed.2d 174 (1977); 9 J. Moore, B. Ward & J. Lucas, *Moore's Federal Practice* ¶ 110.13[11], at 193 (2d ed. 1982).

After oral argument, this panel issued an order on January 14, 1982, calling on the plaintiffs to move the district court to compel the deposition testimony of the five witnesses, and calling on the court to review the grand jury transcripts *in camera*, to consider the materials discovered by plaintiffs since the district court's original order, and to rebalance the need for disclosure against the need for grand jury secrecy. 667 F.2d 4, 4. The court was then to issue a supplemental order to be certified to this panel. *Id.*

The parties and the district court have now complied with our directives. The district court refused to compel the deposition testimony of the five witnesses after they made it clear that they would respond as before. The district court then engaged in the requested analysis and concluded that release of portions of the four MacMillan Bloedel employees' transcripts and all of the McCain transcript was required.

The defendants and McCain once again argue that the district court has erred in ordering release of the transcripts. The MacMillan Bloedel employees have not complained about the new order, no doubt because their employer has settled with the

---

**3.** Fed.R.Crim.P. 6(e)(3)(C)(i) provides that "[d]isclosure otherwise prohibited by this rule of matters occurring before the grand jury may also be made ... when so directed by a court, preliminarily to or in connection with a judicial proceeding."

opt-out plaintiffs and agreed to cooperate with the opt-out plaintiffs in their efforts to gain release of the grand jury transcripts. St. Joe, McCain's employer, also settled with the opt-out plaintiffs. However, evidence of complicity in the price-fixing conspiracy by employees of defendants who have settled remains relevant to the opt-out plaintiffs' claim against other defendants.

## II

■ The standards by which the district court's order should be analyzed are set out in the Supreme Court's decision in *Douglas Oil Co. v. Petrol Stops Northwest*, 441 U.S. 211, 99 S.Ct. 1667, 60 L.Ed.2d 156 (1979). That case similarly involved a request by civil antitrust plaintiffs for grand jury transcripts emanating from the government's investigation of the civil defendants. The Court stated:

> Parties seeking grand jury transcripts under Rule 6(e) must show that the material they seek is needed to avoid a possible injustice in another judicial proceeding, that the need for disclosure is greater than the need for continued secrecy, and that their request is structured to cover only material so needed.

*Id.* at 222, 99 S.Ct. at 1674. A district court's determination to release grand jury transcripts under Rule 6(e) may be upset only upon a showing of a clear abuse of discretion. *Id.* at 223, 99 S.Ct. at 1675; *State of Texas v. United States Steel Corp.*, 546 F.2d 626, 629 (5th Cir.), *cert. denied*, 434 U.S. 889, 98 S.Ct. 262, 54 L.Ed.2d 174 (1977); *Allis-Chalmers Mfg. Co. v. City of Fort Pierce*, 323 F.2d 233, 241 (5th Cir. 1963); 8 *Moore's Federal Practice* ¶ 6.05[2], at 6–109 (1981).

■ The district court here did not abuse its discretion in ordering release of the grand jury transcripts. The discussion that follows considers separately the district court's exercise of discretion with respect to the transcripts of McCain and the MacMillan Bloedel employees.

### A

When deposed by the opt-out plaintiffs, McCain experienced considerable and frequent difficulty in recalling the events about which he was questioned. In addition, he invoked the fifth amendment once. The district court, in its April 15, 1981, order, directed that McCain's entire grand jury transcript be released. It found that "in the interest of justice the need for disclosure . . . far outweighs the slender remaining need for secrecy." The grand jury in question had been disbanded. McCain's transcript had already been made available, in whole or in part, to the litigants. His employer, St. Joe, and its competitors already had access to it, thus minimizing the chances of retaliation against him. The district court found the need for disclosure to be great since certain information in that transcript could only be made available to the trier of fact through release of the transcript.

After remand, the district court found that details about McCain's participation in the price-fixing conspiracy had not been discovered despite the opt-out plaintiffs' intensive discovery efforts. The district court reviewed *in camera* the transcripts of McCain's grand jury and deposition testimony and ordered release of the entire grand jury transcript finding that "[d]isclosure is necessary to uncover relevant, but otherwise unavailable, discovery information."

We affirm the district judge's order releasing the McCain transcript. The district judge should be the best informed individual in the legal world concerning the details of the corrugated container litigation. He has applied the appropriate legal standard, reviewed the pertinent materials, and concluded that release of the McCain transcript would help to refresh McCain's recollection. Release of a grand jury transcript to refresh a witness' recollection is perhaps the most frequently cited justification for such a course of action. *See Douglas Oil Co. v. Petrol Stops Northwest*, 441 U.S. 211, 222 n.12, 99 S.Ct. 1667, 1674 n.12 (1979); *United States v. Procter & Gamble Co.*, 356 U.S. 677, 683, 78 S.Ct. 983, 987, 2 L.Ed.2d 1077

(1958); *State of Texas v. United States Steel Corp.*, 546 F.2d 626, 631 (5th Cir.), *cert. denied*, 434 U.S. 884, 98 S.Ct. 262, 54 L.Ed.2d 174 (1977); *Allis-Chalmers Mfg. Co. v. City of Fort Pierce*, 323 F.2d 233, 241 (5th Cir. 1963). The record solidly supports the district court's conclusion that the need for disclosure outweighs the interest in continued grand jury secrecy and that disclosure is necessary to prevent an injustice.

### B

The four MacMillan Bloedel employees all invoked or threatened to invoke the fifth amendment when questioned during depositions about their roles in the price-fixing conspiracy. They had previously testified under grants of immunity before the grand jury. In response to the opt-out plaintiffs' request that these grand jury transcripts be released, the district court stated:

> After presiding over both the criminal and the class trials, after supervising discovery by class and opt-out plaintiffs in the civil litigation, after ruling on motion after motion regarding the grand jury transcripts, the court is convinced that diligent discovery without access to the transcripts has not, will not, and cannot succeed in presenting sufficient facts to a jury to enable it to make any kind of informed decision as to the issues in this case. The Fifth Amendment wall is too high, too broad, and too thick.

The court concluded that the interests of justice required that the grand jury transcripts of the MacMillan Bloedel employees be disclosed.

In our remand order, we required the opt-out plaintiffs to lay a proper predicate for release of the grand jury transcripts by first moving to compel the deposition testimony of the MacMillan Bloedel employees. After remand, the opt-out plaintiffs moved to compel the testimony. In addition, the plaintiffs narrowed their request for the grand jury transcripts of the four employ-

ees. They requested release of the portions of the grand jury transcripts concerning price communications with competitors relating to any opt-out account, the Northern Indiana marketing area, the Ohio marketing area for the time period after 1971, and national accounts, as well as acts of affirmative concealment of the conspiracy.

The district court denied the plaintiffs' motion to compel deposition testimony and ordered release of the portions of the grand jury transcripts requested by the plaintiffs.[4] The court reviewed the grand jury transcript *in camera* and found that the need for disclosure still outweighed the continuing interest in grand jury secrecy. Although many witnesses had testified since the court's original disclosure order, it found that the four MacMillan Bloedel employees remained key witnesses due to their significant pricing responsibilities. The court concluded that the interests of justice required disclosure of discrete portions of their grand jury transcripts.

The district judge's careful weighing of the interests at stake in disclosure of these transcripts also must be affirmed. The deference normally due the decision of a district judge in these matters is particularly appropriate in a case such as this. The district judge has presided over all phases of this litigation and is thoroughly acquainted with the issues that will arise in the opt-out trial. His conclusion that a compelling and particularized need for the information in the grand jury transcripts of these witnesses exists which outweighs countervailing considerations has not been shown to be wrong. Clearly, it cannot be perceived as an abuse of the discretion vested in the district judge.

Defendants urge that the opt-out plaintiffs failed to particularize and structure their needs for grand jury transcripts as closely and strictly as possible. The result, they claim, is an order which permits an inappropriate breadth of discovery of secret

---

4. The district court based its denial of plaintiffs' motion to compel on the current uncertainty of the law in the area. *See In re Corrugated Container Antitrust Litigation, Appeal of* *John Conboy*, 661 F.2d 1145 (7th Cir. 1981) (en banc), *cert. granted sub nom., Pillsbury Co. v. Conboy*, 454 U.S. 1141, 102 S.Ct. 998, 71 L.Ed.2d 292 (1982).

grand jury proceedings. They say the generality of the order reveals many areas which should remain secret because they were never made the subject of fifth amendment invocations or contain information available through other sources. These might be valid objections in a case where the judge making the determination was not so thoroughly imbued with the substance and form of both the criminal and civil proceedings. To require such a detailed structure of matching and mating in this case, however, would serve only to burden the court. While the interests in grand jury secrecy do not disappear after the grand jury has disbanded, those interests do not constitute an impregnable barrier to disclosure of grand jury transcripts. The four MacMillan Bloedel employees are no longer pressing for suppression of their grand jury transcripts. The generalized interests in grand jury secrecy are thus more easily overcome. The district court's supplemental findings demonstrate that disclosure is not improper and that its order was not rendered merely to ease and facilitate the general discovery efforts of the opt-out plaintiffs.

Although disclosure of grand jury transcripts over later assertions of the fifth amendment is not as common as disclosure based on subsequent memory failures, courts have held that such fifth amendment assertions do justify disclosure. *See, e.g., United States v. Borden, Inc.,* 1976–2 Trade Cases ¶ 61,177 (D.Ariz.1976); *In re Disclosure of Grand Jury Transcripts,* 309 F.Supp. 1050, 1053 (S.D.Ohio 1970). The finding necessary to justify disclosure is a need sufficiently compelling and particularized that disclosure is essential to avoid an injustice. There is no plausible reason why a witness' invocation of the fifth amendment would foreclose the possibility of such a finding.

### III

The district court noted that, with release of the transcripts involved in this appeal, the opt-out plaintiffs will in the future face a greater burden in demonstrating a need

for disclosure of other transcripts. The only issue before this panel, however, is whether the district court abused its discretion in ordering release of the five transcripts. We conclude that it did not and, accordingly, we

AFFIRM.