FRANK, Judge.
The Tribune Company and its reporter Lynn Afendoulis have sought review of an order barring public disclosure of motions to repress or expunge and attendance at a related hearing stemming from a grand jury presentment not accompanied by a true bill or indictment. The post-presentment events and the trial court’s order implicate section 905.28(1), Florida Statutes (1987), which provides that:
No report or presentment of the grand jury relating to an individual which is not accompanied by a true bill or indictment shall be made public or be published until the individual concerned has been furnished a copy thereof and given 15 days to file with the circuit court a motion to repress or expunge the report or that portion which is improper and unlawful.
We draw the factual setting from the trial court’s disputed order. A Pinellas County grand jury conducted an investigation into the governmental operations of the City of Tarpon Springs. The grand jury’s sealed presentment contained references to one or more of the City’s past or present employees or officials. After the presentment was sealed, consistent with section 905.28, those persons mentioned in it were furnished a copy and accorded the prescribed period within which to file appropriate repression or expunction motions with the trial court. It appears that at some point following transmittal of the presentment to persons who are identified in it, The Tribune published a purported verbatim text of the presentment.[1] In any event, after the filing of the statutorily permitted motions, The Tribune and another newspaper sought, unsuccessfully, to intervene and gain access to the motions. The trial court did, however, grant the requested intervention solely to enable the newspapers to seek review of the order foreclosing revelation of the motions and presence at the appertaining hearing.[2]
In challenging the trial court’s exclusionary order, The Tribune does not attack the constitutionality of section 905.28. See Miami Herald Publishing Co. v. Marko, 352 So.2d 518 (Fla.1977). It does, however, attempt to surround its claim with colora-tions of a constitutionally insured right, urged upon us in terms of an absolute entitlement to access. That is to say, The Tribune contends that because the First Amendment’s guarantee of a free press has been extended to override judicial preclusion from criminal proceedings in such cases as Press-Enterprise Co. v. Superior Court of California, 478 U.S. 1, 106 S.Ct. 2735, 92 L.Ed.2d 1 (1986) (Press-Enterprise Co. II); Press-Enterprise v. Superior Court of California, 464 U.S. 501, 104 S.Ct. 819, 78 L.Ed.2d 629 (1984) (Press-Enterprise Co. I); and Richmond Newspapers, Inc. v. Virginia, 448 U.S. 555, 100 *53 S.Ct. 2814, 65 L.Ed.2d 973 (1980), the principles underlying those decisions compel reversal of the trial court’s order. Neither the authority furnished us by The Tribune nor our independent research reveals a persuasive constitution-based reason for rejecting the trial court’s determination to insulate the motions and the attendant hearing from publication. The authorities relied upon by The Tribune are First Amendment cases originating in the barring of access to the trial or other eviden-tiary stage of criminal proceedings. See e.g., Press-Enterprise Co. II; Waller v. Georgia, 467 U.S. 39, 104 S.Ct. 2210, 81 L.Ed.2d 31 (1984); Press-Enterprise Co. I; Globe Newspaper Co. v. Superior Court for Norfolk County, 457 U.S. 596, 102 S.Ct. 2613, 73 L.Ed.2d 248 (1982); Richmond Newspapers, Inc. The historical secrecy associated with the grand jury process, see Douglas Oil Co. of California v. Petrol Stops Northwest, 441 U.S. 211, 218-219, n. 9, 99 S.Ct. 1667, 1672-1673, n. 9, 60 L.Ed.2d 156 (1979), is not overcome by the equally historical fact that trial and trial-related proceedings were open to the public at the moment when the First Amendment became a part of our organic law. See Richmond Newspapers, Inc.. Thus, we adhere to the incontrovertible view expressed in Press-Enterprise Co. II that:
Although many governmental processes operate best under public scrutiny, it takes little imagination to recognize that there are some kinds of government operations that would be totally frustrated if conducted openly. A classic example is that “the proper functioning of our grand jury system depends upon the secrecy of the grand jury proceedings.”
478 U.S. at 8-9, 106 S.Ct. at 2740-2741.
The foregoing analysis generates the final question which we affirmatively answer; i.e., are the procedures contemplated in section 905.28(1) cloaked with the same degree of secrecy as is enjoyed by the grand jury in the receipt of evidence, its deliberations and final product? Notwithstanding that the procedural steps provided in section 905.28(1) are ancillary to the grand jury process, Palm Beach Newspapers, Inc. v. Doe, 460 So.2d 406, 408 (Fla. 4th DCA 1984), we need not undertake a protracted exposition of our reasons for finding the trial court’s determination sound. Section 905.28(1) represents an expression of legislative awareness that a grand jury report or presentment alluding to unindicted persons carries with it the potential for stigmatizing character and integrity. If section 905.28(1) did not exist, an unindicted person referred to in a grand jury’s report or presentment would be without an effective means to attempt pre-publication protection of his or her name. To harmonize the public’s right to learn the content of a grand jury’s action with the individual's right not to suffer irremediable detriment, the legislature formulated section 905.28(1) in recognition of “the right to be heard before being condemned to suffer grievous loss of any kind, even though it may not involve the stigma and hardships of a criminal conviction_” Joint Anti-Fascist Refugee Committee v. McGrath, 341 U.S. 123, 168, 71 S.Ct. 624, 646-647, 95 L.Ed. 817 (1951) (Frankfurter, J., concurring). Hence, “[wjhere a person’s good name, reputation, honor or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential.” Wisconsin v. Constantineau, 400 U.S. 433, 437, 91 S.Ct. 507, 510, 27 L.Ed.2d 515 (1971). It is evident that the statute’s underpinning derives from a constitutional imperative that a person’s liberty interest in the preservation of reputation not be exposed to degradation without antecedent procedural due process.
Section 905.28(1) provides the essential “notice and an opportunity to be heard.” To adopt The Tribune’s version of the First Amendment’s reach would do violence to a right protected by the Fourteenth Amendment. The trial court’s application of section 905.28(1) accommodates the competing constitutional concerns.
Affirmed.
DANAHY, A.C.J., and LEHAN, J., concur.

. Although we assume, solely for the purpose of this opinion, that publication of the presentment occurred, perhaps even as a result of disclosure to The Tribune by a person identified in it, such events have no bearing upon judicial implementation of section 905.28. See Philpitt v. Weintraub, 377 So.2d 247 (Fla. 3d DCA 1979).

. The practice of granting the media limited intervention to test the correctness of a trial court’s closure order is not an uncommon practice. See In re Petition of the Tribune Co., 784 F.2d 1518 (11th Cir.1986); Newman v. Graddick, 696 F.2d 796 (11th Cir.1983).