### UNITED STATES of America

v.

**Stephen J. MAZZOLA Christina Svendsen Sebastian Mazzola James S. Konaxis Anthony D. Marek, and Frank V. Messina, Jr.**

**No. CRIM. 01–10012–RGS.**

United States District Court, D. Massachusetts.

Nov. 26, 2001.

---

Victor A. Wild, United States Attorney's Office, Boston, MA, for Plaintiff.

Edward R. Gargiulo, Gargiulo, Rudnick & Gargiulo, Thomas J. Butters, Butters, Brazilian & Small, L.L.P., Gary C. Crossen, Foley, Hoag & Eliot, Daniel J. O'Connell, III, O'Connell & Pollenz, Walter H. Underhill, Martin Boudreau, Milton, Walter H. Underhill, Boston, MA, for Defendants.

### MEMORANDUM AND ORDER
### ON PRETRIAL MOTIONS

BOWLER, United States Magistrate Judge.

Pending before this court is: (1) a motion under Rule 6(e), Fed.R.Crim.P., filed by defendants Anthony D. Marek and James S. Konaxis (Docket Entry # 64) and, through an Endorsed Order, joined in by defendant Frank V. Messina, Jr.; and (2) a motion for discovery filed by defendant Stephen Mazzola (Docket Entry # 61) and, through endorsed orders, joined in by various co-defendants. The government opposes the motions. (Docket Entry ## 71 & 72). Having reviewed the filings, a decision can be rendered on the papers.

### I. OMNIBUS RULE 6(E) MOTION OF DEFENDANTS ANTHONY D. MAREK AND JAMES S. KONAXIS (DOCKET ENTRY # 64)

■ Defendants Marek, Konaxis and Messina ("defendants") move for disclosure of the following grand jury material: (1) copies of any material used to prepare for or as evidence before the grand jury "which materials were disclosed ... to persons not directly in the employ of the

United States Government" as well as to entities not regular divisions of the United States government; (2) the names, addresses and titles of all such persons and entities; (3) copies of the grand jury testimony of such persons and entities and identification of the materials the persons or entities used in testifying; and (4) copies of the grand jury testimony of any person in the regular employ of the United States government who relied on the advice or assistance of the persons who were not directly in the employ of the United States government or of the representatives of the entities that were not regular divisions of the United States government.[1] Defendants also move: (1) for an order allowing them to conduct discovery upon any unforeseen need arising as a result of the disclosures of the aforementioned grand jury material; (2) for a hearing on the motion; and (3) a hearing on the issue of whether the government violated the secrecy provisions of Rule 6(e) ("Rule 6(e)"), Fed.R.Crim.P. (Docket Entry # 64).

The latter three items are **DENIED.** The request to conduct future unforeseen discovery is premature. In the event this court or the district judge allows disclosure of grand jury material in the future and such disclosure leads to unforseen discovery, defendants may seek discovery by filing a motion at that time. A hearing on this motion is not necessary inasmuch as the motion, the supporting memorandum and the government's opposition are all well briefed. A hearing on whether the government violated Rule 6(e) is also not necessary at this point in time.

As to the former matters, defendants seek access "to matters occurring before the grand jury" within the meaning of Rule 6(e)(2). Rule 6(e), which "codifies the long-standing policy of secrecy provided grand jury proceedings," *United States v. Tager,* 638 F.2d 167, 168 (10th Cir.1980), sets forth six exceptions to the general rule of secrecy.[2] *In Re Grand Jury Proceedings,* 158 F.Supp.2d 96, 100 (D.Mass. 2001). For reasons stated below, defendants fail to sufficiently establish either a particularized need or that the exception embodied in Rule 6(e)(3)(C)(ii) justifies

---

**1.** In the event the second, third and fourth requests involve prospective government witnesses, the requests implicate Jencks Act material. By operation of the Jencks Act, grand jury testimony of prospective government witnesses is not subject to pretrial disclosure. *United States v. Liuzzo,* 739 F.2d 541, 544 (11th Cir.1984). Stated otherwise, "Rule 6(e)(3)(C) does not authorize this Court to direct pretrial production of grand jury testimony also constituting Jencks Act material." *United States v. Exolon–Esk Company,* 1995 WL 46719 at * 5 n. 4 (W.D.N.Y. Jan.19, 1995).

**2.** The grand jury's function is twofold. "It must delicately balance its function of determining whether there exists probable cause to believe that an offense has been committed against its function of protecting citizens against unfounded criminal prosecutions." *In Re Disclosure of Grand Jury Material,* 645 F.Supp. 76, 78 n. 7 (N.D.W.Va.1986). The

well established interests served by the rule of grand jury secrecy are:

(1) To prevent the escape of those whose indictment may be contemplated; (2) to insure the utmost freedom to the grand jury in its deliberations, and to prevent persons subject to indictment or their friends from importuning the grand jurors; (3) to prevent subornation of perjury or tampering with the witnesses who may testify before [the] grand jury and later appear at the trial of those indicted by it; (4) to encourage free and untrammeled disclosures by persons who have information with respect to the commission of crimes; [and] (5) to protect innocent accused who is exonerated from disclosure of the fact that he has been under investigation, and from the expense of standing trial where there was no probability of guilt.

*United States v. Pimental,* 199 F.R.D. 28, 32 (D.Mass.2001).

their discovery of the grand jury material.[3]

During the investigation leading to the indictment for the conspiracy to defraud the Internal Revenue Service, the government requested and in April 1998 obtained a court order authorizing the disclosure of grand jury documents and information to investigators and data analysts of the Insurance Fraud Bureau of Massachusetts ("IFB"). The IFB is a quasi-governmental agency created by statute to prevent and investigate fraudulent insurance transactions and composed of two voluntary private associations of insurance carriers. *See United States v. Pimental,* 199 F.R.D. 28, 29–30 (D.Mass.2001) (describing make up and functions of the IFB); *accord In Re Grand Jury Proceedings,* 158 F.Supp.2d at 98–99 (same); *Commonwealth v. Ellis,* 429 Mass. 362, 708 N.E.2d 644, 646–647 (1999) (same); *see In Re Justices of the Superior Court,* 218 F.3d 11, 13 (1st Cir.2000) (referring to IFB as "quasi-governmental entity"); *United States v. Pimental,* 201 F.R.D. 24, 26 (D.Mass.2001) (recognizing that federal government did not fund IFB).

The government requested court authorization to disclose the material pursuant to the exception set forth in Rule 6(e)(3)(A)(ii). This exception allows disclosure of matters occurring before the grand jury to "government personnel (including personnel of a state or subdivision of a state) as are deemed necessary by an attorney for the government to assist" the attorney in performing his "duty to enforce criminal law." [4] Rule 6(e)(3)(A)(ii), Fed.R.Crim.P.

The court allowed the request for disclosure in April 1998 and signed the government prepared, form order. Although such Rule 6(e)(3)(A)(ii) requests had been

**3.** Because this court finds both showings lacking, this court need not decide whether the exception set forth in Rule 6(e)(3)(C)(ii) also requires a showing of particularized need. Although not required to resolve the issue, however, this court agrees that "the particularized need standard is applicable to motions for disclosure under [Rule 6(e)(3)(C)(ii) ]." 24 James William Moore *Moore's Federal Practice* § 606.06[3][e] (2000); *see United States v. Liuzzo,* 739 F.2d 541, 544–545 (11th Cir.1984) (particularized need required to disclose grand jury material under Rule 6(e)(3)(C)(i)); *but see United States v. DeGroote,* 122 F.R.D. 131, 135 (W.D.N.Y. 1988) (the defendant must establish particularized need for disclosure under Rule "6(e)(3)(C)(i) *or* that grounds exist to dismiss the indictment under Fed.R.Crim.P. 6(e)(3)(C)(ii);" emphasis added).

With all due respect, this court does not agree that defendants are entitled to discover the requested grand jury material merely to determine the scope and impact of a violation of Rule 6(e), as determined by the court in *United States v. Pimental,* 199 F.R.D. at 37 (finding defendants "entitled to [grand jury] discovery to determine the scope and possible impact of Rule 6(e) violations" by government

which violated Rule 6(e)(3)(A)(ii) by disclosure to officials of Insurance Fraud Bureau of Massachusetts). Rather, the pertinent inquiry is whether defendants demonstrate a "particularized need," or, at a minimum, that grounds exist to support a motion to dismiss the indictment. As to the latter, defendants fail to make even a colorable showing of prejudice sufficient to support a motion to dismiss the indictment. *See generally Bank of Nova Scotia v. United States,* 487 U.S. 250, 256, 108 S.Ct. 2369, 101 L.Ed.2d 228 (1988).

**4.** The text and legislative history restrict "government personnel," which the statute does not define, "to people in the employ of the government." *In Re Grand Jury Proceedings,* 158 F.Supp.2d at 106 (exhaustive and scholarly discussion of legislative history and text of Rule 6(e)(3)(A)(ii)). To fall within the exception, the person assisting the government must not only use the information to assist the federal criminal investigation, but he must also be within the employ of the state or federal government. *See In Re Grand Jury Proceedings,* 158 F.Supp.2d at 103–116. IFB investigators and data analysts do not qualify as "government personnel" within the meaning of Rule 6(e)(3)(A)(ii). *United States v. Pimental,* 199 F.R.D. at 34–35.

allowed by various district judges in this circuit, *In Re Grand Jury Proceedings,* 158 F.Supp.2d at 97 n. 1, the rule is self executing. *In Re Grand Jury Proceedings,* 158 F.Supp.2d at 100–101 (rejecting government's position that rule requires court authorization and viewing government's attempt to obtain such authorization as attempt "to acquire 'a little cover' "); *accord United States v. Pimental,* 199 F.R.D. at 32 n. 8 (rule is self executing and government's attempt to secure approval is "looking for a little 'cover' "); *see United States v. Sells, Engineering, Inc.,* 463 U.S. 418, 426, 103 S.Ct. 3133, 77 L.Ed.2d 743 (1983) (Rule 6(e)(3)(A), which includes subparagraph (ii), authorizes disclosure "as a matter of course, without any court order"). Contrary to certain case law at the time, *see United States v. Pimental,* 199 F.R.D. at 35 (setting forth relevant case law which predated the April 1998 order that similar state insurance investigators were not "government personnel" under Rule 6(e)(3)(A)(ii)),[5] the form order prepared by the government and signed by the district judge states that the IFB investigators and data analysts "act as government personnel within the meaning of Rule 6(e)(3)(A)(ii)." (Docket Entry # 64, Ex. B).

"A defendant's effort to obtain grand jury materials can only succeed with a showing of 'particularized need.' " *United States v. Burke,* 856 F.2d 1492, 1496 (11th Cir.1988) (affirming lower court's rejection of argument that government misconduct during investigative and grand jury stages, including flagrant Rule 6(e) violations by government of grand jury secrecy rule, warranted grand jury disclosure); *see Douglas Oil Company v. Petrol Stops Northwest,* 441 U.S. 211, 221–222, 99 S.Ct. 1667, 60 L.Ed.2d 156 (1979); *United States v. Procter & Gamble Company,* 356 U.S. 677, 682, 78 S.Ct. 983, 2 L.Ed.2d 1077 (1958). Even where such a particularized need is shown, access to grand jury material must be " 'discreet and limited' " and " 'structured to cover only the material need.' " *United States v. Liuzzo,* 739 F.2d 541, 545 (11th Cir.1984) (quoting *Procter & Gamble,* 356 U.S. at 683, 78 S.Ct. 983, with internal brackets omitted, and *Douglas Oil,* 441 U.S. at 222, 99 S.Ct. 1667).

■ Particularized need is lacking as to the request for documents and evidence shown to the grand jury inasmuch as the government represents that since the indictment and except for Jencks Act material, "the Government has disclosed all materials, necessarily including Grand Jury materials, to the defendants." (Docket Entry # 71). Moreover, such material more than likely constitutes business records and documents independent of the grand jury investigation. *See United States v. Pimental,* 199 F.R.D. at 36 n. 14 (quoting *Church of Scientology International v. United States Department of Justice,* 30 F.3d 224, 235 (1st Cir.1994)).[6]

---

**5.** The government's reliance on the April 1998 court order as justifying nondisclosure to defendants is therefore not entirely convincing. Irrespective of the court order, Rule 6(e)(3)(A)(ii) does not provide a basis for the disclosure. Indeed, a similar court order authorizing release of grand jury material to IFB investigators and data analysts did not deter the court in *Pimental* from concluding that the government violated Rule 6(e)(3)(A)(ii) because such officials were not "government personnel" within the meaning of the exception. *See United States v. Pimental,* 199 F.R.D. at 30 & 34–36. The existence of the court order does, however, support a finding that any violation was not "knowing" under Rule 6(e)(2).

**6.** As further recognized by the First Circuit in *Church of Scientology,* however, identifying which documents were shown to the grand jury " 'falls within the broad reach of grand jury secrecy.' " *Church of Scientology International v. United States Department of Justice,* 30 F.3d at 235 n. 15.

■ Considerations justifying secrecy are even stronger with respect to defendants' request for grand jury testimony. *See generally Douglas Oil Company of California v. Petrol Stops Northwest*, 441 U.S. at 223, 99 S.Ct. 1667 (as "considerations justifying secrecy become less relevant, a party asserting a need for grand jury transcripts will have a lesser burden in showing justification"). Such testimony of non-government witnesses[7] lies at the heart of a grand jury proceeding. Even after return of the indictment and discharge of the grand jury, disclosing the testimony of a grand jury witness discourages free and untrammeled disclosures by future grand jury witnesses and increases their legitimate fear of witness tampering. *See Douglas Oil Company of California v. Petrol Stops Northwest*, 441 U.S. at 222, 99 S.Ct. 1667.

Furthermore, defendants' need for the material to support a motion to dismiss does not outweigh the need for the grand jury proceedings to remain secret. Defendants fail to make a preliminary factual showing of serious government misconduct "sufficient to give rise to a motion to dismiss." *United States v. DeGroote*, 122 F.R.D. 131, 136 (W.D.N.Y.1988) (denying the defendant's motion to discover grand jury material inasmuch as he "made no 'preliminary factual showing of serious misconduct'"). Even assuming that the government disclosed grand jury material to the four identified IFB officials and that these individuals participated in the grand jury proceedings, there is no indication that the IFB officials used the grand jury material to pursue civil proceedings of in-surance fraud. *See generally United States v. Sells Engineering, Inc.*, 463 U.S. at 431–432, 103 S.Ct. 3133 (discussing prohibition of use of grand jury material by government agency in civil proceeding absent court authorization under Rule 6(e)(3)(C)). In fact, the IFB investigators and data analysts identified by the government signed certification letters acknowledging that "grand jury material may not be disclosed or used for any civil or administrative purposes."[8]

In addition, by its terms, Rule 6(e)(2) provides the sanction of contempt for knowing violations of Rule 6(e). The presence of such an express sanction evidences a Congressional intent that contempt, as opposed to dismissal of an indictment, serves as the most appropriate remedy for a knowing and relatively minor violation of Rule 6(e)(3)(A)(ii). Thus, a federal court, notified of a potential violation as a result of the certification procedure required under Rule 6(e)(3)(B), may therefore act to prevent disclosures that are improper under Rule 6(e)(3)(A)(ii) by invoking the contempt sanction in Rule 6(e)(2). *See generally In Re Grand Jury Proceedings*, 158 F.Supp.2d at 101 (noting that legislative history and text of Rule 6(e)(3)(A)(ii) at most "suggest that the Court should act to prevent disclosures that are improper under (A)(ii);" emphasis omitted).

■ As to defendants' need for the discovery to support a motion to dismiss, a federal court may not invoke its supervisory power to dismiss an indictment for prosecutorial misconduct in grand jury proceedings absent a showing of prejudice.

---

7. As explained in footnote one, the Jencks Act precludes pretrial disclosure of the testimony of prospective government witnesses appearing before the grand jury.

8. There is, however, no certification from Cassandra Bennett of the IFB. The govern-ment identified Bennett as a potential recipient of grand jury material. (Docket Entry # 64, Ex. F). In the event the government disclosed grand jury material to Bennett, the government is directed to advise defendants whether Bennett signed a certification letter.

*Bank of Nova Scotia v. United States,* 487 U.S. 250, 251–255, 108 S.Ct. 2369, 101 L.Ed.2d 228 (1988). The misconduct at issue does not affect the make-up or structure of the grand jury itself such as, for example, a claim of racial discrimination in the selection of grand jurors where prejudice is presumed. *See Bank of Nova Scotia v. United States,* 487 U.S. at 256–257, 108 S.Ct. 2369; *United States v. Ashland Oil, Inc.,* 705 F.Supp. 270, 274 (W.D.Pa. 1989). Defendants must therefore establish prejudice to succeed on a motion to dismiss. Prejudice requires establishing "that the violation substantially influenced the grand jury's decision to indict or there is grave doubt that the decision to indict was free from the substantial influence of such violations." *Bank of Nova Scotia v. United States,* 487 U.S. at 256, 108 S.Ct. 2369. Assuming *arguendo* in defendants' favor that the four identified IFB officials participated in the grand jury proceedings, the government represents that the grand jury's investigation and deliberations were not "interfered with." (Docket Entry # 71, p. 8). Given the nature of the violation, there is nothing to suggest that this representation is inaccurate. Defendants therefore fail to show that grounds for prejudice, an essential element of a motion to dismiss, may exist within the meaning of Rule 6(e)(3)(C)(ii).

In sum, defendants' request for the first four categories is **DENIED**. Defendants may not discover Jencks Act material at this time. To the extent the request seeks material not covered by the Jencks Act, defendants fail to show a particularized need and/or that grounds may exist for a motion to dismiss the indictment. In the event discovery allowed by the district judge [9] uncovers additional facts supporting disclosure, defendants may renew their motion.

## II. *STEPHEN MAZZOLA'S DISCOVERY MOTION (DOCKET ENTRY # 44)*

1. Except to the extent that the government is directed to comply with LR. 116.2(B)(2)(a) and (f), the request is **DENIED** in light of the government's representations that the Secret Service did not open a file on the matter, the matter was referred to state authorities at the Woburn Police Department and the government delivered copies of any state prosecutions known to the government regarding Joseph Mazzola. The government further represents that it made no effort to influence the outcome of the matter referred to the state authorities.

3.[10] **DENIED** inasmuch as, after making a reasonable inquiry, the government represents that, "No such information is known to the government." (Docket Entry # 72). The government is directed to comply with LR. 116.2(B)(2)(a), (e) and (f).

4. **DENIED** in light of the government's representations that it obtained copies of the three case files in the state proceedings and provided them to the defense and its description of the government's brevis contact with the state district attorney's office. The government is directed to comply with LR. 116.2(B)(1)(c).

5. **DENIED** in light of the government's representations regarding its continuing attempts to obtain the medical and/or psychological records of Joseph Mazzola. The government is directed to comply with LR. 116.2(B)(2)(g).

---

**9.** This court assumes the government's representation that the district judge allowed such discovery is correct. The record does not contain a transcript of the April 25, 2001 hearing.

**10.** The motion does not contain a request number two.

6 & 7. **DENIED** as moot inasmuch as the government represents that it "has copied all documentary materials in this case for the defense, exclusive of Jencks Act material." (Docket Entry # 72). As to other matters pending before the IFB not involving the investigation of this case, the request is **DENIED** at this time inasmuch as and the government represents that "there has been no" such referral for prosecution by the IFB.

9. **DENIED** for reasons stated in part I. This court also doubts whether the government has the power to waive grand jury secrecy. Moreover, as also noted in the government's response, the government disclosed the grand jury materials in this case to the defense except for Jencks Act statements and testimony.

10. **DENIED** inasmuch as the government represents that "no financial records of the type requested were maintained for the reason that the United States Attorney's Office receives no funding from the IFB." (Docket Entry # 72).

12. **DENIED** without prejudice at this time as premature.