**UNITED STATES of America, Plaintiff**

v.

**RODRIGUEZ–TORRES,**
**et al., Defendants.**

**Criminal No. 07–302 (JAG).**

United States District Court,
D. Puerto Rico.

June 19, 2008.

Jose A. Ruiz–Santiago, Julia Diaz–Rex, United States Attorney's Office, San Juan, PR, for Plaintiff.

## OPINION AND ORDER

GARCIA–GREGORY, District Judge.

Pending before the Court is Defendants' motion to inspect grand jury minutes. (Docket No. 1920). For the reasons set forth below, the Court **DENIES** Defendants' Motion.

### FACTUAL AND PROCEDURAL BACKGROUND

In this case, a total of one hundred and ten (110) doctors, were charged in a eighty six count Superseding Indictment for having participated in a scheme to improperly obtain a license to practice medicine in Puerto Rico. (Docket No. 1104). On May 29, 2008, Defendant Elba I. Torres Benitez ("Torres") filed a motion requesting that this Court disclose all grand jury transcripts. Torres alleges that during the grand jury proceedings, Assistant United States Attorney Jose A. Ruiz Santiago ("Ruiz") engaged in prosecutorial misconduct when he interrupted the investigative function of the grand jury. Specifically, Torres relies entirely on four (4) alleged interruptions made by Ruiz in the grand jury testimony of Luis Navedo Ortiz ("Navedo"). Torres focuses on Ruiz's fourth alleged intervention. According to Torres, during this intervention Ruiz did not allow Navedo to answer a question by a grand jury member that alluded to the fact that there may have been people inside the Board of Medical Examiners, who were purposely flunking students. Torres points to the Government's interviews of Pablo Valentin Torres, (Docket No. 1920, Exh. 4) and Gregorio Diaz, (Docket No. 1920, Exh. 3). Torres states that Gregorio Diaz admitted to erasing answers from various student because he believed they had failed. Furthermore, Torres brings to this Court's attention that Pablo Valentin admitted during his interview that he passed two candidates because he believed that Gregorio Diaz was failing them on purpose.

Torres avers that it has a right to know whether this evidence was ever given to the grand jury. Moreover, Torres contends that it has a right to know whether other people inside the Board of Medical Examiners altered exams as did Gregorio Diaz. According to Torres, all of the grand jury transcripts should be disclosed in order to ascertain whether there was a pattern of prosecutorial misconduct throughout the grand jury proceedings; and to determine whether there is any exculpato-

ry or impeachment evidence in said transcripts. In the alternative, Torres requests that this Court hold an in *camera* inspection of said transcripts to determine whether there was a pattern of prosecutorial misconduct. (Docket No. 1920). On June 2, 2008, Ruiz opposed Torres' motion. (Docket No. 1947). On June 17, 2008, Defendants Nancy Barbosa, Mayra Mora, Marjorie Santiago, Onnis Acosta, Vidalina Torres, Manuel Malave Hernandez, Maria Vargas, Obet Jimenez, Enery Cordero, Gerardo Gonzalez, Pilar Bulted (together with Torres hereinafter referred to as Defendants) moved to join Torres' motion. (Docket No. 1977). Said request was granted by this Court. (Docket No. 1978). Additionally, an extension of time was requested for the June 20, 2008 dispositive motions filing deadline. (Docket No. 1978).

## DISCUSSION

 The Supreme Court has repeatedly recognized the importance of secrecy in grand jury proceedings, even after, as in this case, the grand jury has concluded its function. *See Douglas Oil Co. v. Petrol Stops Northwest*, 441 U.S. 211, 222, 99 S.Ct. 1667, 60 L.Ed.2d 156 (1979); *United States v. McMahon*, 938 F.2d 1501, 1504 (1st Cir.1991). Grand jury secrecy facilitates the investigation of criminal charges by assuring potential witnesses that their testimony will not become public knowledge, thus encouraging them to testify freely and limiting the potential that they will be improperly influ-

enced by those under investigation. *United States v. Pimental*, 380 F.3d 575, 591 (1st Cir.2004)(internal citations omitted). At the same time, it ensures "that persons who are accused but exonerated by the grand jury will not be held up to public ridicule." *Id.* The Supreme Court has stated that there are several reasons for grand jury secrecy:

> (1) To prevent the escape of those whose indictment may be contemplated; (2) to insure the utmost freedom to the grand jury in its deliberations, and to prevent persons subject to indictment or their friends from importuning the grand jurors; (3) to prevent subornation of perjury or tampering with the witness who may testify before [the] grand jury and later appear at the trial of those indicted by it; (4) to encourage free and untrammeled disclosures by persons who have information with respect to the commission of crimes; (5) to protect [an] innocent accused who is exonerated from disclosure of the fact that he has been under investigation, and from the expense of standing trial where there was no probability of guilt. *Douglas Oil Co. v. Petrol Stops Northwest*, 441 U.S. 211, 219 n. 10, 99 S.Ct. 1667, 60 L.Ed.2d 156 (1979) (internal citations omitted).

Pursuant to Fed.R.Crim.P. 6(e), grand jury material may be disclosed before trial.[1] *United States v. Liuzzo*, 739 F.2d 541,

---

1. The Appellate Circuit Courts disagree as to whether grand jury transcripts of prospective government witnesses need only be released by the government insofar as required under the Jencks Act, 18 U.S.C. § 3500. The Jencks Act provides in pertinent part that:

 In any criminal prosecution brought by the United States, no statement or report in the possession of the United States which was

made by a Government witness or prospective Government witness (other than the defendant) shall be the subject of subpoena, discovery, or inspection until said witness has testified on direct examination in the trial of the case. 18 U.S.C. § 3500(a); *see also United States v. Wilkinson*, 124 F.3d 971, 977 (8th Cir.1997).

544 (11th Cir.1984); *see also United States v. Horton,* 1993 U.S.App. LEXIS 28406 (4th Cir.1993). Since 1946, the disclosure of grand jury minutes has been governed by Rule 6(e) of the Federal Rules of Criminal Procedure. *Ill. v. Abbott & Assocs.,* 460 U.S. 557, 566, 103 S.Ct. 1356, 75 L.Ed.2d 281 (1983). "This provision is not an invitation to engage in a fishing expedition to search for grand jury wrongdoing and abuse when there are no grounds to believe that any wrongdoing or abuse has occurred." *United States v. Loc Tien Nguyen,* 314 F.Supp.2d 612, 616 (E.D.Va. 2004). Under the rule, a court may release grand jury material to a defendant "who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury." Fed.R.Crim.P. 6(e)(3)(E)(ii). To justify this release, the defendant must show what has been described as a "particularized need."

■ The Supreme Court has consistently held that Rule 6(e) requires a strong showing of "particularized need" for grand jury material before any disclosure will be permitted. *Abbott,* 460 U.S. at 567, 103 S.Ct. 1356; *Douglas Oil Co.,* 441 U.S. at 222, 99 S.Ct. 1667; *Dennis v. United States,* 384 U.S. 855, 869, 86 S.Ct. 1840, 16 L.Ed.2d 973 (1966). In determining whether to break that traditional secrecy,[2] parties seeking disclosure must show "that the material they seek is needed to avoid a possible injustice in another judicial proceeding, that the need for disclosure is greater than the need for continued secrecy, and that their request is structured to cover only material so needed." *Douglas Oil Co.,* 441 U.S. at 222, 99 S.Ct. 1667. The Supreme Court has stated that "such a showing must be made even when the grand jury whose transcripts are sought has concluded its operations."[3] *Id.*

■ A Court called upon to determine whether grand jury transcripts should be released has substantial discretion. *See id.; Pittsburgh Plate Glass Co. v. United States,* 360 U.S. 395, 396–97, 79 S.Ct. 1237, 3 L.Ed.2d 1323 (1959); *United States v. Abusaid,* 256 Fed.Appx. 289 (11th Cir. 2007); *McAninch v. Wintermute,* 491 F.3d 759, 767 (8th Cir.2007). That discretion, however, is not unlimited. *See Dennis v. United States,* 384 U.S. 855, 86 S.Ct. 1840, 16 L.Ed.2d 973 (1966); *McMahon,* 938 F.2d at 1504.

---

Some Circuits have held that by operation of the Jencks Act, grand jury testimony of prospective government witnesses is not subject to pretrial disclosure. *United States v. Liuzzo,* 739 F.2d 541, 544 (11th Cir.1984); *United States v. Bruton,* 647 F.2d 818, 823–24 (8th Cir.1981); *United States v. Pelton,* 578 F.2d 701, 709 (8th Cir.1978); *United States v. Callahan,* 534 F.2d 763, 766 (7th Cir.1976); *United States v. Quintana,* 457 F.2d 874, 878 (10th Cir.1972); *see also United States v. Mazzola,* 183 F.Supp.2d 195, 197 n. 1 (D.Mass. 2001). Other Circuits have held otherwise. *United States v. Short,* 671 F.2d 178, 186 (6th Cir.1982)("The Jencks Act does not apply to a motion for pretrial disclosure of a grand jury transcript"); *United States v. Glassman,* 562 F.2d 954, 957 (5th Cir.1977); *United States v. Budzanoski,* 462 F.2d 443, 454 (3d Cir.1972).

**2.** The Supreme Court has consistently stressed the importance of the secrecy of grand jury proceedings. *See Butterworth v. Smith,* 494 U.S. 624, 630, 110 S.Ct. 1376, 108 L.Ed.2d 572 (1990); *Douglas Oil Co. v. Petrol Stops Northwest,* 441 U.S. 211, 222, 99 S.Ct. 1667, 60 L.Ed.2d 156 (1979); *Dennis v. United States,* 384 U.S. 855, 869, 86 S.Ct. 1840, 16 L.Ed.2d 973 (1966).

**3.** Once the proceeding of the grand jury ends, the interests of secrecy are reduced, but not eliminated. *Douglas Oil Co.,* 441 U.S. at 222, 99 S.Ct. 1667. "Stringent protection of the secrecy of completed grand jury investigations may be necessary to encourage persons to testify fully and freely before future grand juries." *Abbott,* 460 U.S. at 566 n. 11, 103 S.Ct. 1356.

Here, Defendants request that all grand jury testimonies be disclosed so they can determine whether the Ruiz's interruptions during Navedo's testimony before the grand jury substantially influenced the grand jury's decision to indict. Furthermore, Defendants claim that said jury transcripts are essential to determine whether there was grand jury abuse on the part of the Government. Specifically, Defendants question whether the Government offered any evidence to the grand jury that persons inside the Board of Medical Examiners were purposely flunking people and whether this may have influence the grand jury's decisions to indict. Moreover, Defendants argue that the disclosure of all grand jury transcripts could lead to exculpatory and/or impeachment evidence. Alternatively, Defendants request that this Court perform an in *camera* inspection of all the grand jury transcripts to determine whether there was a pattern of prosecutorial misconduct throughout the grand jury proceedings.

 Rule 6(e) "is not an invitation to engage in a fishing expedition to search for grand jury wrongdoing and abuse when there are no grounds to believe that any wrongdoing or abuse has occurred." *United States v. Loc Tien Nguyen*, 314 F.Supp.2d 612, 616 (E.D.Va.2004). A defendant's particularized need must be based on more than mere speculation. *United States v. Reed*, 147 F.3d 1178, 1179 (9th Cir.1998). Because grand jury proceedings are entitled to a strong presumption of regularity, a defendant seeking disclosure of grand jury information under Fed.R.Crim.P. 6(e)(3)(E)(ii) bears a heavy burden of establishing that particularized and factually based grounds exist to support the proposition that irregularities in grand jury proceedings may create a basis for the dismissal of an indictment. *Loc Tien Nguyen*, 314 F.Supp.2d at 616. This burden cannot be satisfied with conclusory or speculative allegations of misconduct. *Id.* "It is not sufficient for [Defendants] to assert that [they have] no way of knowing whether prosecutorial misconduct occurred." *United States v. DeTar*, 832 F.2d 1110, 1113 (9th Cir.1987); *see also United States v. Edelson*, 581 F.2d 1290, 1291 (7th Cir.1978) (holding that a "showing" under Fed.R.Crim.P. 6(e) must be based on a particularized need for disclosure of the transcript and that mere speculation that prosecutorial abuse may have occurred is insufficient.)

Defendants offer nothing more than a speculative assertion that other portions of the grand jury transcript may reveal prosecutorial misconduct. Essentially, they assert that the mere fact that Ruiz intervened during Navedo's testimony is sufficient proof that the Government could have engaged in misconduct during the testimony of other persons that appear before the grand jury. Defendants have in their possession two additional transcripts of other physicians that testified before the grand jury. However, they have not proffered any proof that the Government made any interruptions in any of these testimonies.

 As to the four alleged interruptions, this Court finds that they are not sufficient to demonstrate prosecutorial misconduct or prejudice. The First alleged interruption can be observed in page 40, line 5 and 6 of the transcript of Navedo's testimony which states in pertinent part as follows:

GRAND JURY MEMBER: Okay. When did Benjamín get his results?

THE WITNESS: I think two days after.

GRAND JURY MEMBER: And did he pass?

**MR. RUÍZ SANTIAGO:** I was going to ask the same thing.

THE WITNESS: Yes.

Here Navedo was asked by a grand jury member whether Benjamin Moreno, a friend of Navedo, had passed the examination. Ruiz merely states that he was going to ask the same question. Afterwards, Navedo answers the question. This certainly cannot be characterized as prosecutorial misconduct on the part of Ruiz. He merely stated that he was interested in the question posed by the grand jury member.

The second alleged interruption occurred in page 41, line 6 of Navedo's transcript, which states in pertinent part as follows:

> GRAND JURY MEMBER: Did you have any other contact with Yolanda Rodríguez?
>
> THE WITNESS: (In mid-answer)
>
> MR. RUÍZ SANTIAGO: The samples?
>
> THE WITNESS: Well, you know, I would call her every once in awhile, on Secretary day and what not. But we had the medical representative would always during the internship would give you medical samples. And she had told Dr. Santiago if he would have any Sucor or any anti high blood pressure medication. And I would give them some.
>
> GRAND JURY MEMBER: But in relation of the fraud results of the exam, you know, did she offer like Santiago if you know any other persons?
>
> THE WITNESS: No. She never—we never—she never told me.

As can be ascertained from reading said portion of the transcript, Ruiz's interruption did not interfere with Navedo's ability to answer the grand jury member's question. The third interruption occurred in page 47, line 6–11 of the transcript, which states in pertinent part as follows:

> MR. RUÍZ SANTIAGO: Are you aware that the information we have gathered in this investigation we intend to share with the Puerto Rico Medical Examining Board, and that your license may be, most likely, you may lose that license?
>
> Are you aware of that?
>
> THE WITNESS: Yes.
>
> MR. RUÍZ SANTIAGO: Yes? We have another question.

Again, Ruiz's intervention does not in anyway interfere with the proceeding before the grand jury. Ruiz merely warns the witness of one of the possible consequences of the investigation being conducted and makes sure that the witness has understood said question. This intervention on the part of Ruiz is also not an irregularity that is worth being brought to this Court's attention.

The Fourth and final of the interruptions that Ruiz committed can be found in page 48 line 9 of Navedo's transcript:

> GRAND JURY MEMBER: I understand how you feel. I believe too that you did the right thing by coming here and wanting to cooperate. Do you believe that—well, I believe that maybe the board of the examinations maybe is not the only duty for that, but do you believe that, let's say, that you receive one letter with the results, the other doctor receives another letter with the results, did you think maybe those are fake? Maybe you pass, and in the document it says you pass, but, you know, it's only a speculation, but, if they can send you a letter that says that you didn't pass, but the board—maybe the original is—says that you really passed the exam, you know, maybe it's two.
>
> INTERPRETER/TRANSLATOR: (Translating question for Witness)
>
> MR. RUÍZ SANTIAGO: Let me—let me intervene for just a second. I know the grand juror has a preoccupation based on his testimony that—

MR. RUÍZ SANTIAGO: The question is that: Do you believe that there is a scheme that they—that someone in there is failing on purpose people who really pass?

MR. RUÍZ SANTIAGO: Okay. Okay. Let—let me inform the Grand Jury that, at this moment, there's no evidence of that. But, obviously, but if that comes about, we will investigate that. But I don't want you to ask a—I wouldn't like for you to ask a speculative question to the witness, because we don't want witnesses to come here to speculate. They only come here to testify of what they have personal knowledge of. So, I know that is a preoccupation that you have. Obviously, we share that. And we keep an open mind at all times. And if there is for any chance later we discover that there is a systematic scheme of failing people who really passed the exam, we're going to go into that too. Okay? But let's—let's wait until we have evidence of that first and not—not jump into speculation—okay? Does anybody have—do you have any other questions?

GRAND JURY MEMBER: No, it's okay. I'll leave it, you know.

MR. RUÍZ SANTIAGO: Okay.

GRAND JURY MEMBER: I don't want to complicate it.

MR. RUÍZ SANTIAGO: Okay. Any other questions for the witness?

Of all of the alleged interruptions brought to this Court's attention, this is the only instance where Ruiz does not allow Navedo to answer the grand jury's members testimony. Ruiz did not allow this question because it called for speculation. Nonetheless, Navedo had already testified that he believed that someone inside the Board of Medical Examiners could flunk him on purpose.

Navedo testified that he had used the services of Dr. Carlos Santiago to obtain the false passing scores for the Basic and Clinical examinations. Upon informing Onnis Acosta ("Acosta"), one of Navedo's contacts inside the Board of Medical Examiners, that he would not be using his services to obtain the false scores, Acosta threatened Navedo stating that someone inside the Board of Medical Examiners could take revenge on him. To Navedo this meant that someone could intentionally flunk him. All of this can be observed from pages 18 and 19 of Navedo's transcript which states in pertinent part as follows:

MR. RUÍZ SANTIAGO: But, before that—I'm sorry—you've talked about Onix Torres as to that first—

THE WITNESS: Acosta.

MR. RUÍZ SANTIAGO:—Onix Acosta—I'm sorry—as to that first exam, did he ever request any money from you? Before we go into the second exam, let's go—let's cover that area.

THE WITNESS: Well, when this, about the test, Dr. Santiago told me about the money and that I was able to gather it, well, on that same day, Dr. Onix Acosta called me and told me "I've already got someone from the inside that's going to help you, but it's $4,000". So, there, I found myself in the spot that I had to tell him—I had to tell him that "Listen, I already talked to Dr. Santiago, and, even though it's going to cost me $1,000 more, the way you are, you get lost, I have to grab the first thing that's in front of me because I'm running out of money". And then he told me, "But, man, why didn't you tell me? I've already talked to my contact at the board". And I told them "Well, really? Explain to that person that I had the situation—it's not my fault". So, Onix got upset with me, and he told me that the person inside had said that he could, you know, take vengeance on me be-

cause of—because of having moved the contact.

**MR. RUÍZ SANTIAGO:** Okay. Now, so, you eventually decided to go with Dr. Santiago and pay $5,000. Is that correct?

THE WITNESS: Yes. I paid $5,000 to Dr. Santiago because he was an elderly person, and he was more responsible. And I, you know, I felt I trusted him more.

**MR. RUÍZ SANTIAGO:** Okay. Let's go back now to the clinical—the clinical exam. And can you explain to the members of the Grand Jury what—what happened in relation to that clinical exam after you—after you paid the $5,000 for the basic exam?

THE WITNESS: Well, by the clinical examination test, we were already finishing the internship. But I hadn't been able to study a lot, because you have to work 32 hours, and you have no time to study. So, I said to myself "I'm going to take the test, even though, I said, I haven't studied as I had for the first. And if I killed myself for the first, I did pass it, what can I expect from the second"? Even if I kill myself and learn the book by heart, I already knew that there was somebody doing tricks with the grades and that I could talk to that person. So, I decided to take it.

Thus, the grand jury members had some unsupported information from which they could infer that there may have been someone inside the Board of Medical Examiners, who was purposely flunking people. The fact that Ruiz prevented any further questions on this matter because Navedo lacked any real personal knowledge of this matter does not constitute prosecutorial misconduct. Defendants cannot expect this Court to disclose all jury transcripts because they believe that Ruiz continued to interrupt and prevent any entry of information relating to the alleged purposeful flunking of individuals in the Board of Medical Examiners. Defendants' conclusory and speculative argument of prosecutorial misconduct is not sufficient to overcome the grand jury's secrecy and the strong presumption of regularity that accompanies it. Therefore, the evidence presented by Defendants is not a sufficient showing of a particularized need.

██ Ruiz's fourth and last interruption is also the basis for Defendants' argument that disclosing all of the grand jury transcripts could reveal exculpatory evidence. Defendants contend that if Ruiz's interruption were extensive it could lead to exculpatory evidence. However, general allegations that disclosure of grand jury transcripts would reveal exculpatory evidence is not sufficient to satisfy requirement of showing of particularized need. *Lynde v. Rienks,* 922 F.2d 1448, 1454–1455 (10th Cir.1991); *United States v. Rising,* 867 F.2d 1255, 1260 (10th Cir.1989); *United States v. Short,* 671 F.2d 178 (6th Cir. 1982). Defendants only offer a conclusory and general allegation that the disclosure of grand jury transcripts would reveal exculpatory evidence. This certainly does not satisfy the "particularized need" requirement.

Defendants also state that they have a right to know whether the Government offered evidence to the grand jury of the fact that persons inside the Board of Medical Examiners where purposely flunking people. According to Defendants, they have a right to know this under their right to discover exculpatory evidence. This contention also does not sway this Court to permit the disclosure of the grand jury transcripts since the Supreme Court has held that the Government has no duty to present exculpatory evidence to the grand jury. *United States v. Williams,* 504 U.S.

36, 55, 112 S.Ct. 1735, 118 L.Ed.2d 352 (1992).

 Defendants further allege that all of the grand jury transcripts should be disclosed because it could lead to impeachment evidence. Although the use of grand jury transcripts for impeachment may satisfy the particularized need requirement, *Douglas Oil Co.*, 441 U.S. at 222 n. 12, 99 S.Ct. 1667[4] the balance struck between secrecy and the need for grand jury transcripts must result in the disclosure of information limited to the claimed need. *In re Grand Jury Matter*, 682 F.2d 61, 66 (3d Cir.1982). Defendants' request for disclosure "is not structured to cover only the material needed" to avoid a possible injustice. *Douglas Oil*, 441 U.S. at 222, 99 S.Ct. 1667. Defendants seek to inspéct all of the grand jury minutes. Defendants' speculation that said disclosure could provide Defendants with possible impeachment evidence does not demonstrate to this Court that the need for disclosure is greater than the need for continued secrecy. By asking for the transcripts of all witnesses testifying before the grand jury, Defendants reveal that their request is little more than a wish to go on a fishing expedition for anything helpful to them.

 Alternatively, Defendants argue that this Court should perform an in *camera* inspection all of the grand jury transcript. Courts should perform in *camera* inspection of grand jury transcripts under their supervisory power to ensure that defendants' rights were not compromised during the grand jury proceeding. *See United States v. Duff*, 529

F.Supp. 148, 156 (N.D.Ill.1981)(holding that an in *camera* inspection of all grand jury transcripts was necessary because the transcript presented by Defendant showed that the Assistant United States Attorney demonstrated a questionable degree of zealousness in questioning a witness' good faith in invoking the Fifth Amendment during his testimony before the grand jury). However, in the case at bar, Defendants have not offered any evidence that will lead this Court to conclude that there was an irregularity[5] in the grand jury proceedings, which compromised their rights. This Court finds that Defendants have not made a sufficient showing of a particularized need pursuant to Rule 6(e). Therefore, Defendants' request for disclosure, and the alternative request for the Court to conduct an in *camera* inspection of the transcripts, must be denied.

## CONCLUSION

For the reasons stated above, the Court hereby **DENIES** Defendants' motion to inspect grand jury minutes. (Docket No. 1920). Accordingly, the request for an extension of the dispositive motion filing deadline, (Docket No. 1978) shall be denied.

IT IS SO ORDERED.

---

4. "[T]he typical showing of particularized need arises when a litigant seeks to use 'the grand jury transcript at the trial to impeach a witness, to refresh his recollection, to test his credibility and the like.'" *Id.*

5. *United States v. Mechanik*, 475 U.S. 66, 75, 106 S.Ct. 938, 89 L.Ed.2d 50 (1986)(O'Connor, J., concurring)("The grand jury proceeding is accorded a presumption of regularity, which generally may be dispelled only upon particularized proof of irregularities in the grand jury process").