[J-40-2018] [MO: Saylor, C.J.]

**IN THE SUPREME COURT OF PENNSYLVANIA**
**WESTERN DISTRICT**

IN RE: FORTIETH STATEWIDE
INVESTIGATING GRAND JURY


PETITION OF: DIOCESE OF
HARRISBURG AND DIOCESE OF
GREENSBURG

: No. 45 WM 2017
:
: Appeal from the Order of the
: Supervising Judge of the Fortieth
: Statewide Investigating Grand Jury
: entered on June 15, 2017 at
: Allegheny County No. CP-02-MD-
: 0000571-2016
:
: ARGUED: May 15, 2018

**CONCURRING AND DISSENTING OPINION**

**JUSTICE WECHT**                                    **DECIDED: AUGUST 21, 2018**

This case concerns the propriety of an entry-of-appearance form that the

Pennsylvania Office of Attorney General ("OAG") created for signature by attorneys

appearing in grand jury proceedings. In order to address fully the purpose and necessity

of that form, we first must understand why the OAG implemented it.[1] In 2009, the OAG

---

[1]     Both the Majority and Justice Donohue take issue with my discussion of this
background. *See* Maj. Op. at 24 n.26; Concurring and Dissenting Opinion (Donohue, J.)
at 6 n.4. Specifically, Justice Donohue describes my objective recitation of the
circumstances that led to the creation of the form as "paint[ing] with a broad brush in
describing the *alleged* genesis" of the form. *Id.* (emphasis added). Doing so, she asserts,
is "dangerous" because former-Justice Baldwin currently is facing disciplinary
proceedings. *Id.* I disagree. My recounting of these circumstances is in no way a
proclamation of wrongdoing or unethical behavior. I offer no thoughts or opinions of the
propriety of any action taken by any relevant actor, including former-Justice Baldwin. The
background I summarize simply recites the facts outlined by the Superior Court in the
appeals of the criminal judgments imposed upon the administrators who were called
before the grand jury. *See Commonwealth v. Curley*, 131 A.3d 994 (Pa. Super. 2016);
*Commonwealth v. Spanier*, 132 A.3d 481 (Pa. Super. 2016); *Commonwealth v. Schultz*,
133 A.3d 294 (Pa. Super. 2016).

       As to Justice Donohue's assertion that these circumstances were the "alleged"
genesis of the form, I note that the OAG explained in its brief to this Court that it created
the form as a direct response to the concerns that emanated from the confusion caused

convened a statewide investigating grand jury. The panel was charged with probing, among other matters, whether Jerry Sandusky, former Pennsylvania State University ("Penn State") assistant football coach and founder of a non-profit charity that provided services to children, had engaged in a decades-long course of sexual abuse of children, some of which abuse occurred on Penn State's campus. During the course of the grand jury investigation, the OAG learned that three Penn State administrators may have known about at least one incident of on-campus abuse and may have failed to take responsive action.[2]

Cynthia Baldwin, Esquire, former Pennsylvania Supreme Court Justice and then-General Counsel for Penn State, appeared before the grand jury with each of those administrators. Former-Justice Baldwin indicated to the grand jury's supervising judge that she represented the University,[3] but also appeared with, and sat next to, each administrator during his testimony. Each of the three administrators stated on the record that former-Justice Baldwin was his personal lawyer. Former-Justice Baldwin remained in the courtroom and next to each of the three witnesses for the entirety of his testimony, without objection from the prosecutor or the witnesses themselves.

In hindsight, the OAG realized that former-Justice Baldwin's presence may have been problematic under Pennsylvania law. A grand jury is not a judicial proceeding; it is an investigation. As I discuss in detail below, secrecy is essential to a grand jury's

---

by the Penn State matters that I relate herein. I do not speculate that the Penn State situation was the genesis of the form; the OAG publicly acknowledges that it was. *See* Redacted Brief for the OAG at 2-5.

[2] *See generally Commonwealth v. Curley*, 131 A.3d 994 (Pa. Super. 2016); *Commonwealth v. Spanier*, 132 A.3d 481 (Pa. Super. 2016); *Commonwealth v. Schultz*, 133 A.3d 294 (Pa. Super. 2016).

[3] *See Spanier*, 132 A.3d at 485.

operation. To maintain this secrecy, the Investigating Grand Jury Act, 42 Pa.C.S. §§ 4541-53 ("the Act"), limits those who may be present in the grand jury room. Unlike its federal counterpart,[4] the Act permits the attorney for a client-witness to be present with that witness during his or her testimony. 42 Pa.C.S. § 4549(c)(1) ("A witness subpoenaed to appear and testify before an investigating grand jury . . . shall be entitled to the assistance of counsel, including assistance during such time as the witness is questioned in the presence of the investigating grand jury."); § 4549(c)(3) ("Such counsel shall be allowed to be present in the grand jury room during the questioning of the witness and shall be allowed to advise the witness but shall make no objections or arguments or otherwise address the grand jury or the attorney for the Commonwealth."). Casual observers or representatives of other entities or individuals are not permitted to be in the grand jury room. This includes lawyers for individuals or entities that are the target of the investigation or may otherwise be implicated by the investigation.

The Penn State proceedings are not before the Court today, and I render no opinion regarding the propriety of any person's or entity's actions during those proceedings. I recite these events only to provide the background for what prompted the OAG to take the actions that gave rise to the legal challenges presented in this case. As noted, the Penn State grand jury situation prompted the OAG to create an entry-of-appearance form. The form sought to provide clarity as to whom (or what) an attorney represented and to ensure that attorneys understood their statutory and rule-based obligations to maintain the secrecy of what they learn during the course of the representation as it relates to the grand jury. The substance of that form reads as follows:

> As an attorney properly licensed to practice law in the Commonwealth of Pennsylvania on active status, I hereby enter my appearance on behalf of

---

[4]     See Fed.R.Crim.P. 6(d)(1) (outlining who may be present in the room while the grand jury is in session).

the witness identified below for purposes of his/her testimony before the [grand jury] and for any activity or proceeding related thereto.

I swear or affirm that, under penalty of contempt, I will keep secret all that transpires in the Grand Jury room, all matters occurring before the Grand Jury, and all matters and information concerning this Grand Jury obtained in the course of representation, except where authorized by law or permitted by the Court. 42 Pa.C.S.A. § 4549(b).

These statements are made subject to the penalties of 18 Pa.C.S. § 4903.

As the learned Majority notes, upon being asked to sign this form, the attorneys for the appellants in this case, the Dioceses of Harrisburg and Greensburg ("the Dioceses"),objected and filed a joint motion to strike. The supervising judge upheld the form's lawfulness. Today's Majority "disapprove[s] the non-disclosure provision of the entry-of-appearance form in its present incarnation." Maj. Op. at 5 n.5. Invoking our "supervisory authority" over grand jury matters, the Majority proceeds to add a provision to the OAG's form—one that contravenes the plain language of the Investigating Grand Jury Act—and then removes another provision that it deems overly broad. Although I agree with some aspects of the Majority's opinion, I cannot join the Majority's expansive exercise of our supervisory powers over grand juries. Moreover, for the reasons that follow, I would address all four of the Dioceses' stated questions, and would reject all of them. I would uphold the form, unaltered, in the face of those specific challenges.[5]

As an initial matter, like the Majority, I cannot ignore the justiciability challenge that confronts us at the threshold on this appeal. See Maj. Op. at 8-9 n.8. The grand jury's

---

[5] That does not mean that there can be no meritorious challenge to the form in the future. For instance, as the Majority indicates, this Court has exclusive authority to regulate the conduct of attorneys. See Maj. Op. at 16 n.17 (citing PA. CONST., art. V, § 10(c)). It is at least arguable that the Act, by requiring attorneys to maintain silence even though witnesses are not so restrained, intrudes upon that prerogative. However, presently, no one challenges the form, or the Act, upon that basis. That question is not before the Court, and I accordingly express no opinion regarding the merits of such a theory.

term has expired. The supervising judge provided the lawyers for the Dioceses with the materials they had requested, a request that formed the basis for the initial joint petition that started this appeal. Thus, the circumstances that gave rise to this appeal no longer exist, and it appears that there is no live case or controversy that needs to be resolved. Nonetheless, I agree with the Majority that the case presents issues of such substantial importance that a final resolution of those issues is warranted, rendering this case justiciable. *Id.*

The modern grand jury is used to investigate, and, where appropriate, charge individuals and entities with crimes. Often, a grand jury is empaneled to investigate matters that initially need to be shielded from public knowledge or external influence. . These matters may involve public corruption or organized crime (or both), and may entail vast investigations of large institutions. Secrecy is the backbone of the process, critical to the integrity, accuracy, and reliability of these investigations.

This Court has recognized at least four reasons necessitating secrecy in grand jury proceedings. First, secrecy protects the jurors themselves. Secrecy affords the grand jury "the utmost freedom . . . in its deliberations, [preventing] persons subject to indictment or their friends from importuning the grand jurors." *In re Dauphin County Fourth Investigating Grand Jury*, 19 A.3d 491, 503 (Pa. 2011) (citations omitted). Second, the confidential nature of the proceedings guards the witnesses from "subornation of perjury or tampering." *Id.* Third, secrecy serves to "encourage free and untrammeled disclosures by persons who have information with respect to the commission of crimes." *Id.* And, finally, secrecy of the proceedings ensures that those individuals who are being investigated do not learn of their potential indictment and abscond from the jurisdiction to avoid prosecution. *Id.*

The United States Supreme Court also has offered similar rationales for adhering steadfastly to the secrecy that traditionally shrouds these proceedings:

> We consistently have recognized that the proper functioning of our grand jury system depends upon the secrecy of grand jury proceedings. In particular, we have noted several distinct interests served by safeguarding the confidentiality of grand jury proceedings. First, if preindictment proceedings were made public, many prospective witnesses would be hesitant to come forward voluntarily, knowing that those against whom they testify would be aware of that testimony. Moreover, witnesses who appeared before the grand jury would be less likely to testify fully and frankly, as they would be open to retribution as well as to inducements. There also would be the risk that those about to be indicted would flee, or would try to influence individual grand jurors to vote against indictment. Finally, by preserving the secrecy of the proceedings, we assure that persons who are accused but exonerated by the grand jury will not be held up to public ridicule.

*Douglas Oil Co. v. Petrol Stops Northwest*, 441 U.S. 211, 218-19 (1979) (citation and footnotes omitted).

In order to ensure such secrecy, the General Assembly enacted, *inter alia*, Subsection 4549(b) of the Act, which reads as follows:

> **Disclosure of proceedings by participants other than witnesses.**— Disclosure of matters occurring before the grand jury other than its deliberations and the vote of any juror may be made to the attorneys for the Commonwealth for use in the performance of their duties. The attorneys for the Commonwealth may with the approval of the supervising judge disclose matters occurring before the investigating grand jury including transcripts of testimony to local, State, other state or Federal law enforcement or investigating agencies to assist them in investigating crimes under their investigative jurisdiction. Otherwise a juror, *attorney*, interpreter, stenographer, operator of a recording device, or any typist who transcribes recorded testimony may disclose matters occurring before the grand jury *only when so directed by the court*. All such persons shall be sworn to secrecy, and shall be in contempt of court if they reveal any information which they are sworn to keep secret.

42 Pa.C.S. § 4549(b) (emphasis added).

The Dioceses first argue that Subsection 4549(b) applies only to prosecuting attorneys, not to private defense lawyers. The learned Majority analyzes, and rejects, the Dioceses' statutory interpretation arguments, and holds that the plain language set forth in this subsection unambiguously applies to private attorneys. *See* Maj. Op. at 12-14. Justice Donohue reaches the same conclusion, but adds that, even if the plain language was ambiguous, a grand jury's reliance upon secrecy to operate would compel the same conclusion. *See* Concurring and Dissenting Opinion (Donohue, J.) at 4. I agree with both the Majority and Justice Donohue. There is nothing in the language or the purpose of the statute to suggest that private attorneys do not fall within the ambit of this subsection.

The clarity of this subsection notwithstanding, the Majority nonetheless exercises our apparently boundless "supervisory authority," and creates an exception to the statute where the General Assembly has seen fit not to do so. In the normal course of statutory interpretation, courts are precluded from overlooking plain statutory language in pursuit of the General Assembly's presumed intent. 1 Pa.C.S. § 1921(b) ("When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit."). Yet, the Majority does just that. The Majority observes no imprecision or ambiguity in Subsection 4549(b), but nonetheless explains that it does not "believe that the Legislature intended [confidentiality of attorneys appearing before grand jury proceedings] to extend in full measure to that which is not otherwise intended to be held in absolute secrecy, *i.e.* the testimony of client-witnesses." Maj. Op. at 15-16. In other words, the Majority determines that the General Assembly intended the Act to permit a lawyer to disclose publicly a witness' testimony, so long as the witness knowingly and voluntarily consents. Notably, this scenario appears nowhere in the statute. Justice Donohue agrees, and believes that, because the Grand Jury Act permits a witness to disclose his testimony, "it must also be understood to allow an attorney representing that

witness to disclose her client's testimony to the same degree." Concurring and Dissenting Opinion (Donohue, J.) at 5.

There are two substantial defects in the Majority's decision to extend to counsel a witness' statutory right to disclose his or her testimony. First, the nature and extent of our supervisory authority over grand jury proceedings is unclear, rendering its exercise in this case—to override what the Majority concedes is the plain language of the statute—to be suspect, at best. Second, and more importantly, the exception created by the Majority conflicts directly with the plain and unambiguous language of the statute. Hence, I cannot join this part of the Majority's opinion.

The Majority exercises our "supervisory authority" twice in this case, once to add a line to the OAG's form and once to omit a sentence. *See* Maj. Op. at 16, 18. Perhaps we have that authority. But the Majority adduces no compelling source for this power, and makes no attempt to define its contours and boundaries. The Majority cites the explanatory note to Rule 3331 of the Pennsylvania Rules of Appellate Procedure.[6]

---

[6] The Majority also cites this Court's call in *Dauphin County* for a "strong judicial hand" in grand jury proceedings in support of the broad "supervisory authority" it invokes. *See* Maj. Op. at 22. However, a fair reading of *Dauphin County* demonstrates that this Court was not recognizing any particular authority of this Court, and that we did not there bestow any authority upon this Court. Rather, we unequivocally were referring to the important role that a supervising judge must play in ensuring that the secrecy of a grand jury is maintained. *See Dauphin County*, 19 A.3d at 503. Indeed, in the sentences that immediately follow the "strong judicial hand" language, this Court referenced the "seminal role of the supervising judge of a grand jury," noted that "the supervising judge has the singular role in maintaining the confidentiality of grand jury proceedings," and explained that the "supervising judge has the continuing responsibility to oversee grand jury proceedings, a responsibility which includes insuring the solemn oath of secrecy is observed by all participants." *Id.* (citations and quotation marks omitted). The "strong judicial hand" language did not pertain in any way to the review function of an appellate court.

That said, as I have indicated throughout this opinion, my primary concern is not the source of our "supervising authority." I do not, as the Majority maintains, intend to imply that this Court should not "exercise a meaningful degree of control over grand jury

However, the Rule itself does not afford this Court any special powers. The Rule only delineates types of orders over which this Court has review jurisdiction. Essentially, the Rule explains that this Court has jurisdiction to review orders emanating from grand jury proceedings. *See* Pa.R.A.P. 3331(a)(2), (3). The note that follows, to the extent that a note can provide authority to a court, only confirms that Rule 3331 is "intended to provide a simple and expeditious method for Supreme Court supervision of special prosecutions and investigations," including investigating grand juries. *Id.*, Note. The note does not bestow upon this Court a robust rewriting authority that we may wield as we see fit so long as the matter touches upon the operation of a grand jury.

That said, my primary point of divergence does not center upon whether or not we possess such broad powers. I am troubled most by the way in which that authority is exercised in this case. It is unclear how far this Court can go under the guise of exercising our supervisory authority, but it should be uncontroversial that the one thing we cannot do is direct parties to utilize a procedure that plainly contradicts the unambiguous terms of a statute.

As emphasized above, Subsection 4549(b) requires a private attorney to be sworn to secrecy in all but one circumstance. 42 Pa.C.S. § 4549(b). The statute says that an attorney may disclose matters occurring before the grand jury "only when so directed by the court." *Id.* Stated differently, the General Assembly limited to one the situations in which an attorney can discuss what he or she learned in a grand jury proceeding: when given leave of court. There is nothing in the statute that suggests the General Assembly intended for additional circumstances to be added to that list. Nor is there any ambiguity, latent or otherwise, to allow the conclusion that the General Assembly could have meant

---

practice." Maj. Op. at 23. I simply cannot agree that this authority can override the General Assembly's clear language (and intent) and permit additional disclosures of secret information beyond the unambiguous limitation set forth in the statute.

something else.  The General Assembly used the term "only."  The choice of this term could not more clearly evidence the legislature's intent to carve out only a single exception to its general rule.  Yet, the Majority disregards this plain language, determines that the General Assembly could not have intended exactly what it said, and proceeds to graft onto the statute another exception to the general secrecy rule, permitting lawyers to speak if authorized to do so by the testifying witness.  However far our supervisory authority reaches, it does not allow us to rewrite statutes.[7]

---

[7] Justice Donohue disputes my characterization.  *See* Concurring and Dissenting Opinion (Donohue, J.) at 7 n.6.  Specifically, Justice Donohue interprets the form as "prohibiting certain categories of disclosure that are not in fact prohibited by the statute," and "not sufficiently accounting for the kinds of disclosures an attorney is statutorily permitted to make."  *Id.*  She concludes that, based upon "a plain reading of the statute," the General Assembly intended attorneys to be bound by secrecy only to the same extent that their clients are bound.

However, like the Majority, Justice Donohue fails to account for the General Assembly's use of the term "only" in Subsection 4549(b).  The relevant language from that subsection is plain and clear.  The subsection states that an "attorney" (which, we all agree, includes private defense lawyers) "may disclose matters before the grand jury *only* when so directed by the court."  42 Pa.C.S. § 4549(b) (emphasis added).  Thus, the General Assembly created a single circumstance in which an "attorney . . . may disclose matters."  Axiomatically, then, if there is only one circumstance in which an attorney may speak, all others statutorily are prohibited.  Thus, the category of disclosure at issue is not permitted as Justice Donohue suggests; it is, in fact, prohibited.

Neither the Majority nor Justice Donohue contends that the language, including the word "only," is ambiguous.  We are not permitted to ignore those terms in order to give effect to the General Assembly's presumed intent.  *See* 1 Pa.C.S. § 1921(b) ("When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit.").  I am constrained to view the General Assembly's use of the term "only" as a clear expression of legislative intent to limit attorneys in this fashion.  I discern no *indicia* in the language of the Act or otherwise to suggest that the General Assembly did not mean exactly what it said.

Because the unambiguous statutory language affords attorneys only one mechanism to disclose grand jury matters and the Majority adds a second, it is fair to characterize the Majority's actions as rewriting the statute.  *See Penna. Med. Soc. v. Dep't of Pub. Welfare of Com.*, 39 A.3d 267, 283 (Pa. 2012) ("In this regard, it is not for the

The Majority's alternative to the statutory directive undeniably makes sense. Writing on a blank slate, I would endorse the Majority's approach. If a witness can publicly disclose his or her testimony, why should that witness be prohibited from directing her attorney, after full consultation, to speak publicly on her behalf? After all, a lawyer is a client's representative, and serves as his or her mouthpiece in many circumstances. That is what "should" be the case. But that is not what the statutory law permits.[8] The Act permits the witness—no one else— to discuss her testimony publicly without first having to obtain leave of court. The Act does not allow anyone to speak on that witness' behalf, including friends, family members, or even the witness' attorney. An attorney wishing to reveal grand jury matters must receive permission from the supervising judge before

courts to add, by interpretation, to a statute, a requirement which the legislature did not see fit to include.") (citations and internal quotation marks omitted).

---

[8] The Majority asserts that I have not explained why permitting a lawyer to disclose what her client is free to disclose is "an unacceptable intrusion into secrecy," an interest that I have emphasized throughout this opinion. Maj. Op. at 24. Let me be clear: I do not believe that it would be such an intrusion. If the choice were mine, I would endorse the Majority's approach. The problem is that the choice is not mine. That decision resides with the General Assembly. That body chose not to enact the Majority's process. We are bound to that legislative judgment, as we are in all matters of statutory interpretation, regardless of the breadth of our supervisory authority.

The Majority appears to invoke the canon of statutory construction that permits courts to interpret statutory provisions in a manner that avoids absurd results. *Id.*; *see* 1 Pa.C.S. § 1922(1) (stating that, in ascertaining statutory intent, courts may presume that "the General Assembly does not intend a result that is absurd, impossible of execution or unreasonable."). However, it is not an absurd result to conclude that the General Assembly, undoubtedly cognizant of the importance of secrecy in grand jury proceedings, intended to limit those authorized to disclose otherwise confidential matters to as few persons as possible, particularly when we consider the deliberate choice of the term "only" in Subsection 4549(b). Further, as I stress repeatedly herein, the statute plainly does not foreclose all possible avenues by which an attorney in this circumstance may speak for her client—she simply may obtain the permission of the supervising judge.

doing so. The Majority's reasoning notwithstanding, nothing in the unambiguous language of the Act bestows that authority upon a witness' lawyer, even after full consultation with her client. Only the supervising judge has been given the power to allow for additional disclosure. This may not be the most prudent rule. It may even be unconstitutional (although we are not called upon in this case to reach that issue).[9] But the grand jury is governed in the first instance by statute, and the General Assembly has outlined the roles and powers of the relevant participants. Perchance we could use our supervisory authority to supplement what the General Assembly has created, but we abuse that authority when we use it to override statutory provisions with which we disagree.

Here, the General Assembly prescribed just one situation in which an attorney can disclose grand jury information: by leave of court. Undeterred, today's Majority doubles that statutory directive. I cannot endorse this encroachment upon the functions of the legislative branch of our government.[10]

As I noted above, that a testifying witness cannot direct his or her lawyer to state publicly what the witness is authorized to state is indeed confounding, in light of the lawyer's essential representative role. However, rather than judicially revising or supplementing the OAG's form in order to bypass this statutory construct, I would rely upon the mechanism included within the statute itself. Subsection 4549(b) permits

---

[9] *See*, *supra*, n.1.

[10] After inviting me to a "fair reading of [its] opinion," Maj. Op. at 23, the Majority defends its "interpretation" of the Act so as to "permit attorneys to represent their clients." *Id.* The difficulty that I have with this "interpretation" is not that it results in attorneys being able to represent their clients. It is that this "interpretation" effectively creates a new statutory scheme by enlarging the class of persons authorized by the statute to speak publicly. It would be one thing if the Act did not speak to the issue, or if the Act did not use the unambiguous term "only." But, in light of the clear statutory language and intent, expanding a statutory class in this matter seems more like judicial legislation than statutory interpretation.

disclosure of grand jury related information by lawyers "only when so directed by the court." 42 Pa.C.S. § 4549(b). I do not read this provision as preventing a witness who desires her attorney to make her testimony public from petitioning the supervising judge for leave of court for this purpose. To the contrary, I view this grant of authority to the supervising judge as the General Assembly's recognition that there are instances in which the supervising judge must have discretion to deviate from the statutory scheme when doing so is consistent with the interests and purposes of a grand jury investigation.

The Dioceses next argue that the scope of the secrecy obligation in the form is overbroad because it directs attorneys to maintain secrecy for "all matters and information concerning this Grand Jury obtained in the course of representation." *See* Form, *supra*, page 3. With scant analysis, the Majority agrees and, employing its "supervisory prerogative," *see* Maj. Op. at 18, excises the language from the form.

The crux of the Dioceses' argument is that the breadth of the secrecy obligation infringes upon attorneys' ability to represent their clients effectively. Without examination of the role of counsel in these cases or inquiring into how disclosure relates to the interests and purposes of a grand jury, the Majority concludes that prohibiting disclosure in this manner "represents too great an impingement on counsel's ability to effectively represent their clients." Maj. Op. at 17. The only explanation that the Majority offers for this sweeping conclusion is that "facially" this prohibition may relate to information that was not otherwise confidential in the first instance. *Id.* at n.19.[11]

This aspect of the form is indeed broad. However, the breadth is supported by Pa.R.Crim.P. 231(C). The Rule mandates secrecy as to "any information pertaining to

---

[11] The Majority also notes that the breadth of the provision could be read to mean that an attorney also could not address with his or her own client matters learned during the course of representation. *See* Maj. Op. at 17-18 n.19. However, the Majority quickly points out that the OAG and the supervising judge agreed that such a reading is untenable.

the grand jury except as provided by law." *Id.* That provision, promulgated by this Court, can be interpreted only as an endorsement of broad secrecy obligations for those involved in the grand jury process. Nonetheless, the Majority relegates this provision to a footnote and "direct[s]" that it be construed in accordance with the Act. *See* Maj. Op. at 18 n.20. In other words, rather than confront the impact that our own rule has upon the outcome of this case, the Majority commands that its plain terms be misconstrued at best and, at worst, ignored. The Majority then offers an even more troubling justification for disregarding the clear import of the rule. The Majority explains that, "we intend to invoke the rulemaking process to effectuate a clarifying amendment." *Id.* As of today, Rule 231 is a valid and applicable rule. It is entitled to neutral application by this Court, regardless of any potential changes that may (or may not) be made in the future. To my knowledge, we have never shelved a binding, duly-enacted rule because of our intent to clarify the rule in the future. We should not do so here, particularly when the Majority does not identify any particular defect in the rule's actual terms. I would apply the rule, and, in doing so, I would hold that the breadth of the provision is supported by its plain language.

Here again, the Dioceses' concerns can be alleviated according to the terms of the Act and the Form itself. First, however, I must express my agreement with the Majority that common interest and joint defense agreements are valid and are not proscribed by Pennsylvania law. *See* Maj. Op. at 21. I say so now because a substantial portion of the Dioceses' arguments focuses upon the breadth of the secrecy obligation as preventing the sharing of information between participants in such an agreement. The Dioceses go so far as to argue that the Form actually prevents even the formation of these agreements. The Form does no such thing, particularly in light of the Majority's endorsement of joint defense agreements.

The Dioceses largely are concerned that a broad prohibition on disclosure would: (1) prevent formation of joint defense agreements; (2) obstruct the utilization of documents and other information obtained from third parties; and (3) prohibit attorneys from discussing facts and information with third parties, all of which are necessary to provide zealous representation. Notably, neither of the Dioceses in this case has formed or attempted to form such an agreement, nor has either actually experienced these alleged impingements upon its ability to receive effective representation. Nonetheless, as the Majority indicates, the discussion of the core aspects of this case has "naturally segued" into other issues not presented by the actual facts before us. Maj. Op. at 17 n.18.

As to joint defense agreements, and the sharing of information between their participants, the Form itself exempts from secrecy obligations those disclosures that are "authorized by law." Joint defense agreements, and the free disclosure of information between their participants, are (and, in my view, always have been) "authorized by law." Thus, the Dioceses' argument that these agreements are impaired is unavailing.

The Dioceses' assertion that the breadth of the Form infringes upon their attorneys' ability to interact with third parties is similarly unpersuasive. First, if such communication or interaction is necessary, the affected party may seek leave of court per Subsection 4549(b). Thus, a party in such a situation is not without any recourse.

Second, to the extent that the ability to receive effective representation is impinged by the broad secrecy requirements, that impingement alone does not trigger automatic relief. Courts first must balance the state interests against the right or interest being affected, employing the following four factors:

> (1) whether the state interest(s) sought to be achieved can be effectively accomplished in some manner which will not infringe upon interests protected by constitutional rights; (2) whether the state interest(s) is sufficiently compelling when compared with the interests affected, to justify

any infringement of those interests; (3) whether the state interest(s) is sufficiently compelling to justify the degree of infringement that is necessary to effectuate that interest; [and] (4) whether the provision under challenge represents the narrowest possible infringement consistent with effectuating the state interest involved.

*Pirillo v. Takiff*, 341 A.2d 896, 905 (Pa. 1975) (capitalization and punctuation modified for clarity).

The state's interest in secrecy is compelling. Without it, witnesses will be exposed to danger, and will be less willing to come forward and testify truthfully. Additionally, secrecy prevents, as best as possible, tipping off of the target of the grand jury investigation, influencing or threatening of witnesses, flight from the jurisdiction, and other impediments to the investigation. Secrecy is the only, and, therefore, the narrowest, means to achieve the goals of the grand jury and to avoid these potential perils. Of course, effective representation is an important right, and should not be infringed upon lightly. Nonetheless, in the specific context of grand jury proceedings, which are investigative in nature, not judicial, the *Pirillo* factors weigh in favor of the state interest and justify the minimal intrusion upon the right to effective representation.

I do not discount the Dioceses' concerns about their ability to be represented effectively, nor do I pretend to envision all of the circumstances that might arise and affect the balance of these factors. However, the Dioceses' desire to enjoy unrestrained communication with third parties as to grand jury matters, even when made for purposes of effective representation, cannot coexist with the secrecy protections of the grand jury statute. To the extent that some communication with third parties is necessary, those requests may be considered and adjudicated on an instance-by-instance basis. Subsection 4549(b) provides the mechanism for this to occur. It may be cumbersome to seek leave of court for each disclosure, but this is the least restrictive method allowing for balancing of the interests involved.

In sum, while I agree that the Form's secrecy obligation is broad, I conclude that such breadth is consistent with Rule 231 and is not prohibited by the Act. To the extent that the breadth infringes upon the right to effective representation for the limited circumstance of grand jury proceedings, I find that the encroachment is justified per the *Pirillo* factors. Finally, as always, a party perceiving a necessity for breaching the statute's secrecy obligations first must seek and obtain leave of court.

For many of the same reasons, I also would reject the Dioceses' final two arguments. First, the Dioceses maintain that the secrecy obligations in the Form violate an attorney's right to practice law. Putting aside the irregular circumstance that the Dioceses are arguing on behalf of an attorney's rights, rather than their own, the Dioceses have not demonstrated on the merits that the right to practice law is unduly burdened by this form.

The Dioceses recognize that the right to practice a profession is not absolute. Recently, in *Shoul v. Commonwealth, Dep't of Transportation, Bureau of Driver Licensing*, 173 A.3d 669 (Pa. 2017), we held that laws that impact a person's occupational interests are subject to a rational basis test. *Id.* at 677. Here, the state's interest is secrecy in order to protect the operation and integrity of the grand jury process. Requiring confidentiality of those involved in that process, including attorneys, is unquestionably related rationally to that interest. Additionally, for the same reasons, the *Pirillo* factors militate in the state's favor and justify the limitation upon attorneys in this limited context.

Second, the Dioceses argue that the secrecy obligation violates their attorneys' First Amendment right to free expression. In cases governing attorney speech, the Supreme Court of the United States has approved prohibitions on attorney statements that would pose a "substantial likelihood of material prejudice" to the ongoing legal proceedings. *Gentile v. State Bar of Nevada*, 501 U.S. 1030, 1075 (1991). The High

Court explained that such a test "constitutes a constitutionally permissible balance between the First Amendment rights of attorneys in pending cases and the State's interest in fair [proceedings]." *Id.* Finally, the Court held that the restraint must be narrowly tailored to achieve the state's asserted objective. *Id.* at 1076.

As I have explained repeatedly herein, the state's interest in secrecy with regard to grand jury proceedings is compelling. The obligations to maintain that secrecy are necessary, and serve as the narrowest means of achieving that goal. Without secrecy, the grand jury cannot function. If a lawyer was permitted to disclose information learned in the course of representation during grand jury proceedings, secrecy would be destroyed, witnesses would be jeopardized, and the investigation itself could be irreparably imperiled. Thus, such disclosure surely would result in a "substantial likelihood of material prejudice" to the grand jury proceedings.

To be clear, I agree with the Majority's conclusion that the Act applies in full force to defense attorneys, and that common interest/joint defense agreements are valid in Pennsylvania. I join those portions of the Majority's opinion that correspond with these conclusions. Otherwise, I respectfully dissent. Absent a constitutional challenge pertaining to the General Assembly's ability to regulate lawyers, I would uphold the Form as written, for the reasons stated.